619 So.2d 192 (1993)
STATE of Louisiana, Appellee,
v.
Chad GUNNELLS and Kenneth Gunnells, Defendants-Appellants.
No. CR92-1338.
Court of Appeal of Louisiana, Third Circuit.
June 2, 1993.
*194 Frederick Albert Duhy Jr., Donald Whitehead North, Kathleen Elizabeth Petersen, for State of La.
Timothy Allison Meche, for Chad Gunnells and Kenneth Gunnells.
Before DOMENGEAUX, C.J., and YELVERTON and SAUNDERS, JJ.
SAUNDERS, Judge.
Defendants, Kenneth and Chad Gunnells, were each charged with the November 16, 1991, second degree battery of Officer Clint Lemoine, a violation of LSA-R.S. 14:34.1. Following a two day trial, a unanimous six (6) person jury found both defendants guilty as charged. Thereafter, each defendant was sentenced to forty-eight (48) months with the Louisiana Department of Corrections. On appeal, both defendants assert fourteen (14) assignments of error alleging their convictions should be reversed.

FACTS
On November 16, 1991, Detective Clint Lemoine, a detective for the Avoyelles Parish Sheriff's Department, received injuries while attempting to arrest the defendant, Chad Gunnells, on charges of disturbing the peace and trespassing. Detective Lemoine was first notified in the early evening by telephone that there was a disturbance at the residence of his niece, Melissa Jeansonne, and her fiancee, Jessee Desselle. The caller, Shelly Boudreaux Rabalais, told Detective Lemoine that "Chad [Gunnells] was there cussing and whooping and hollering and saying that he was going to get them; he was on their property." Apparently, this phone call was the end result of a series of altercations throughout the day between Chad Gunnells and Jesse Desselle. This conflict stemmed from the fact that Melissa Jeansonne had been married to Chad Gunnells' older brother who had committed suicide as a result of their soured relationship.
Detective Lemoine, along with Linscom Joseph "Doc" Brouillette, arrived at Melissa Jeansonne's and Jesse Deselle's residence and took Desselle's formal complaint. At that time, Desselle also executed an affidavit and "Doc" Brouillette issued an arrest warrant based on this sworn affidavit. Thereafter, based upon information provided by Desselle that Chad Gunnells was across the street at Pettie Sue Armand's residence, Detective Lemoine and Doc Brouillette went to the Armand residence to arrest Chad. Clint Lemoine knocked on the door of the Armand residence and was eventually met by Ms. Armand who informed him that the defendant was not there. While walking away from the Armand residence, Detective Lemoine met up with Chad. At that time, Detective *195 Lemoine grabbed Chad and attempted to take him to the vehicle in order to arrest him.
Both parties agree that initially Chad attempted to break free from Detective Lemoine and a struggle occurred between the two. While this skirmish was occurring, Kenneth Gunnells, Chad Gunnells' uncle and the co-defendant in the present case, arrived on the scene. Kenneth Gunnells and Detective Lemoine engaged in a physical confrontation which resulted in both parties ending on the ground. Defendant, Kenneth Gunnells, testified that at the time of the skirmish, he did not know that Lemoine was a police detective as he was in an unmarked vehicle and was not wearing a uniform. Kenneth Gunnells testified that he was under the impression that Lemoine was a friend of Desselle's, and was trying to harm Chad. He further testified that had he known that Lemoine was a policeman, he would not have engaged in any sort of physical confrontation.
Contrary to defendants' version, Detective Lemoine, along with several other witnesses for the state, described their version of the events. Detective Lemoine testified that he first located Chad Gunnells in the yard of the Armand residence. He further testified that Chad Gunnells approached him saying, "Here I am, here I am." Lemoine informed Chad Gunnells that he had a warrant for his arrest to which Chad Gunnells responded with profanity and told Lemoine, "... I ain't going nowheres." After a time, Chad Gunnells quit resisting and was being escorted to the car at which time Kenneth Gunnells came up to Detective Lemoine from behind, stating, "If you take him, you're going to have to f___ing take me too because he's not going to go." Detective Lemoine testified that, at that point, he informed Kenneth Gunnells as to why he was arresting Chad Gunnells and "asked him not to interfere." At that time, Detective Lemoine stated that he was jumped by both the defendants. He further testified that he was on the ground receiving blows from all directions and he saw Kenneth Gunnells strike him. As a result of this altercation, Detective Lemoine's nose was broken and a deep laceration in his mouth required fifty to sixty stitches. Detective Lemoine also received numerous bruises and scrapes to his face, upper torso, chest, sides, back and stomach causing him considerable pain. Detective Lemoine testified that he took pain medication for two weeks and missed about one week of work. As a result of this fight, Detective Lemoine will require nasal surgery and will be permanently scarred. Detective Lemoine admitted that he was in plain clothes and was traveling in an unmarked vehicle; however, contrary to Kenneth Gunnells' assertions, Lemoine stated that Kenneth Gunnells was aware that he was a police officer.

DISCUSSION
After a review of the record, we find no errors patent. Additionally, five (5) of the defendants' assignments of error were not briefed and are, therefore, considered abandoned on appeal in accordance with the Uniform RulesCourts of Appeal, Rule 2-12.4.

MOTION TO QUASH/REQUESTED JURY INSTRUCTION
By their first assignment of error, defendants contend that the Motion to Quash the bill of information charging them with the second degree battery of Detective Lemoine, should have been granted because Chad Gunnells' arrest was illegal. Defendants further argue that the trial court erred when it refused to instruct the jury as to the illegality of Chad Gunnells' arrest.
The motion to quash claimed that the warrant issued by Justice "Doc" Brouillette was invalid because the warrant was not issued by a "neutral and detached" magistrate and therefore, the arrest was illegal and the charge of second degree battery should be quashed. In the alternative, the motion requested that a special jury charge be given instructing the jury that the defendants had a right, under Louisiana law, to resist an illegal arrest provided that the force used was reasonable. *196 The trial court denied the motion to quash and the requested jury charge.
We note that as a general rule, the law requires that arrest warrants be issued by a "neutral and detached" magistrate. However, the neutrality of Justice "Doc" Brouillette is of no moment because the arrest was otherwise valid under LSA-C.Cr.P. art. 213(3), which provides in pertinent part:
A peace officer may, without a warrant, arrest a person when:
. . . .
(3) The peace officer has reasonable cause to believe that the person to be arrested has committed an offense, although not in the presence of the officer; or
First, we note that the defendants have never contended that the initial arrest was illegal based upon a lack of probable cause. Second, we find that the facts of the present case clearly demonstrate that Detective Lemoine had probable cause to arrest Chad Gunnells. Initially, in a telephone conversation with Shelly Boudreaux Rabalais, Detective Lemoine was notified that there was a disturbance being caused by Chad Gunnells at the residence of Melissa Jeansonne. Subsequently, upon arrival at the Jeansonne residence, Detective Lemoine interviewed both Melissa Jeansonne and Jesse Desselle who confirmed Shelley Boudreaux Rabalais' initial complaint that Chad Gunnells was "going on the property and cussing and whooping and hollering and telling them that he was going to get them ..." As a result, Jesse Desselle, based upon his firsthand knowledge, filed formal charges and signed a sworn affidavit alleging that the above facts were the truth. We find that, based upon these statements, there was sufficient probable cause to arrest the defendant, Chad Gunnells, on charges of disturbing the peace and trespassing.
We also note that in State v. Allen, 450 So.2d 1378 (La.App. 1st Cir.), reversed in part on other grounds, 457 So.2d 1183 (La. 1984), the court, although agreeing with the defendant's claim that the arrest warrant was defective because it had been issued by a police detective who also served as a Justice of the Peace, still found the arrest valid on probable cause. The court stated at page 1386:
"Even though the requirement of an independent magistrate was not met in the instant case, the arrest is not rendered illegal. The crucial question is whether, at the time of the arrest, there was probable cause to believe that a crime had been committed. An arrest, based upon such probable cause, is a valid arrest whether a valid warrant had been issued or not." (Citations omitted.)
As such, we find that, even if the arrest warrant was invalid because it was not issued by a "neutral and detached magistrate," the arrest itself was legal insofar as it was based upon probable cause. As a result of this determination, it follows that Kenneth Gunnells did not have a right to resist the arrest on Chad Gunnells' behalf or to insist that Chad Gunnells resist the arrest. Detective Lemoine testified that he informed Kenneth Gunnells of Chad Gunnells' arrest and asked him not to interfere. Kenneth Gunnells testified that he was completely unaware of the fact that Clint Lemoine was a police officer until after the fight occurred and that had he known he was a police officer, he would not have engaged in any sort of combative behavior. Given these conflicting stories, the jury chose to accept Detective Lemoine's version.
For the above and foregoing reasons, we find this assignment of error is meritless.

MISSING RECORDING
By their next assignment of error, the defendants contend that the trial court erred in denying their motion to compel production of missing tape and in refusing to permit testimony to be taken on this motion. Defendants also claim error in the trial court's decision to allow the district attorney to cross-examine Chad Gunnells concerning a recorded statement which was provided to neither of the defendants during discovery.
*197 Pursuant to LSA-C.Cr.P. art. 716 and 722, defendants requested that the state allow them to inspect, copy and produce recorded statements of all defendants and co-defendants. In response to defendants' request, the state provided a transcription of a statement given by Chad Gunnells on November 16, 1991, to the Avoyelles Parish Sheriff deputies. Upon speaking with Chad Gunnells, Kenneth Gunnells' attorney, Tim Meche, was informed that the statement contained many "inaccuracies and exclusions." Because of this, the defendants orally requested the actual tape from the state, but were informed that the actual tape had been lost. Thereafter, defense counsel filed a motion to compel production of the missing tape or, in the alternative, to exclude evidence of the tape recorded statement. This motion was taken up prior to trial, at which time defense counsel asked the court to compel the state to produce the missing evidence and specifically asked the court to allow the parties to present testimony to establish why the tape could not be produced. The court, in deciding the issue stated:
"[T]he Court will grant your Motion to Exclude the Statement made by Chad Gunnells, and exclude any reference to that statement, other than if Chad Gunnells would take the stand, and, thereby, question him on cross-examination as to the statement."
Insofar as the trial court had held that the statements would be inadmissible in the state's case-in-chief, the trial court further found that an evidentiary hearing to establish why the tape was missing was unnecessary and irrelevant.
The defendants also argue prejudicial error occurred because during the cross-examination of Chad Gunnells, the state was allowed, over the objection of defense, not only to make reference to the recorded statement but to impeach Chad Gunnells with this statement.
In the present case, Chad Gunnells was asked by the state during cross-examination whether he remembered giving a statement on November 16, 1991, to Detective Richard Bordelon. The defense attorney objected, based upon the prior ruling of the trial court, at which time the court overruled the objection. The defendant did not answer the question. Subsequently, the state prosecutor, Mr. Aymond, continued by asking Chad Gunnells:
"Now Chad, I'll ask you again isn't it a fact that you knew that Detective Lemoine had charges for you and he had come to arrest you for those charges and bring you in?"
Chad answered, "I had put it on my statement," to which the state prosecutor responded, "you did put it on your statement?" Chad replied, "I was scared."
We find that the trial court erred in failing to either totally exclude Chad's statement, for all purposes, including impeachment, or, in the alternative, to hold an evidentiary hearing as to why the tape was missing and ultimately, as to whether the statement was admissible. Nevertheless, in this case, the trial court's partial inclusion of Chad's statement was harmless error insofar as no questions were asked by the state, on cross-examination, as to the substance of the statement.
Finally, defendants argue that their case was prejudiced by allowing the state to impeach Chad with a prior statement which defendants never received. Although the original tape was not available, the defendants did, in fact, receive a transcript of this statement. Moreover, the state did nothing more than inquire about whether a statement was made by Chad Gunnells, and did not inquire as to the contents of this statement. The defendant's answer, "I had put that on my statement," was totally unresponsive when read in the context of the question asked by the state. For these reasons, we find that these assignments of error lack merit.

JURY CHALLENGES
By this assignment of error, defendants allege that the trial court erred in denying their challenges for cause with respect to two potential jurors, Samuel J. Mayeaux and Jesse L. Strange. These potential jurors were ultimately excused by defense counsels' peremptory challenges.
*198 LSA-C.Cr.P. art. 797 states in pertinent part:
The state or the defendant may challenge a juror for cause on the ground that:
. . . .
(3) The relationship, whether by blood, marriage, employment, friendship, or enmity between the juror and the defendant, the person injured by the offense, the district attorney, or defense counsel, is such that it is reasonable to conclude that it would influence the juror in arriving at a verdict;
Defendants first allege that the trial court erred in improperly denying their challenge for cause with respect to potential juror Samuel J. Mayeaux. During voir dire, Mr. Mayeaux revealed that his wife had been employed by an assistant district attorney, David Lafargue, in his private firm of Laborde and Lafargue for approximately two years.[1] However, upon further questioning, he explained that his wife's job would not cause him any problems with serving as a juror and that he did not know anything about his wife's work.
Defendants also allege that their challenge for cause to prospective juror Mrs. Strange should have been granted because her son was a parole and probation officer for Avoyelles Parish and her daughter-in-law was working as a bailiff during this trial. However, upon further questioning of Mrs. Strange, she assured counsel that the fact that she had family members involved in law enforcement would not interfere with her decision or ability to be fair.
Although these potential jurors had ties to other individuals who were associated with law enforcement, they both sufficiently stated that they could give the defendants a fair trial.
"It is well settled that the relationships to persons who might be prejudiced does not, `ipso facto' disqualify a person from serving as a juror. The connection must `be such that one might reasonably conclude that it would influence the juror in arriving at the verdict.'" State v. Calloway, 343 So.2d 694, 696 (La. 1976) citing State v. McClure, 258 La. 999, 249 So.2d 109 (1971).
Furthermore, the trial judge is vested with wide discretion in appraising the impartiality of prospective jurors, and his ruling will not be disturbed on appeal absent a clear showing of abuse of that discretion. State v. Jones, 315 So.2d 650 (La. 1975). After our review of the voir dire examination, we find that there is no abuse of discretion on the part of the trial judge in denying the defense's challenges for cause. For the above and foregoing reasons, we find these assignments of error without merit.

REDIRECT/RECROSS
By this assignment of error, defendants allege that the trial court erred in rejecting defense counsel's request to conduct recross-examination of the victim, Clint Lemoine, after the state raised new issues during its redirect examination. Defendants also contend that the trial court erred in allowing the state to go beyond the scope of cross-examination in the re-examination of the victim.
Defendants allege that during redirect, the state was allowed to bring out evidence for the first time that Clint Lemoine had arrested Kenneth Gunnells' daughter two weeks prior to the fight. Defendants contend that it was error for the trial court to permit the state to elicit testimony from its own witness on redirect concerning a subject not delved into by the defense during cross-examination and then refusing to allow the defendant to conduct recross-examination.
Contrary to defendants' assertions, on cross-examination of Clint Lemoine, the defense attorney asked Clint Lemoine if he knew all of the people who lived in the Simmesport community. He then insinuated that Lemoine was attempting to convince the jury that Kenneth Gunnells knew Lemoine was arresting Chad Gunnells, his nephew. Defense counsel also asked Lemoine if he knew Kenneth Gunnells, to which *199 Lemoine responded that they had been introduced. Upon further questioning by defense counsel, Clint Lemoine stated that Kenneth Gunnells knew that Lemoine was a police officer, to which defense counsel responded with an open-ended question, "Tell us how?" Lemoine then stated that he had been summoned to the residence of a relative of Kenneth Gunnells and she knew that he was a police officer. Defense counsel then queried, "And it's your testimony that because a relative of Mr. Kenneth Gunnells knows you're a police officer, he does too?"
In light of defense counsel's questions on cross-examination, the prosecutor properly used re-direct to answer defense counsel's own question on cross-examination as to how Kenneth Gunnells was aware Lemoine was a police officer. The state merely elicited from Lemoine on re-direct what defense counsel opened the door to during cross-examination. The defense claimed that Kenneth Gunnells did not know that Clint Lemoine was a police officer, a point they tried to establish during cross-examination of the victim. The state properly elicited from Lemoine, on re-direct examination, the fact that he had arrested Kenneth Gunnells' daughter only two weeks prior to the incident and had spent several hours with Kenneth's wife in his office. Therefore, the trial court did not err in overruling defendants' objection insofar as the state did not exceed the scope of cross-examination in their re-direct examination of Lemoine.
As to defendants' claim that the trial court erred in not allowing them to re-cross Lemoine, we find that re-direct did not concern material not delved into by the defense during cross-examination and that the trial court properly found that the defense was not entitled to re-cross. Re-cross is within the sound discretion of the trial court, and absent abuse of that discretion and resulting prejudice, a trial court's ruling will not be reversed. State v. King, 355 So.2d 1305 (La.1978). Even assuming arguendo that there was an abuse of this discretion, no prejudice occurred. On direct examination of Kenneth Gunnells by the defense, his explanation as to how his daughter could have been arrested by Lemoine, and yet, he not know that Lemoine was a police officer, was given. As such, we find that this assignment of error lacks merit.[2]

MOTION FOR MISTRIAL
By this assignment of error, defendants allege that the trial court committed error in failing to grant a mistrial due to remarks of the prosecutor during his rebuttal argument. Defendants allege that referring to them as "rattlesnakes," saying "thank God" during rebuttal and referring to the prosecutor's option of charging the defendants with attempted murder, instead of second degree battery, resulted in a mandatory mistrial.
The record indicates that a mistrial was requested only as to the "attempted murder" remark. Therefore, the trial court's failure to grant a mistrial as to any other remarks has not properly been reserved for appeal.
The context of the prosecutor's reference to the defendants as "rattlesnakes" during his rebuttal argument, was as follows:
"He was drunk, Kenneth was drunk. What was it? It was a drunken mess of rattlesnakes, rattlesnakes, waiting to do damage."
We find that this reference to defendants as "rattlesnakes" cannot be read as causing reversible error. The term itself is uttered only twice in quick succession and dwarfs in comparison to the closing arguments of both the state and defense which cover approximately sixty pages. It defies common sense that such a comment would have inflamed the jury to disregard their duty to return a just verdict. State v. Vaccaro, 411 So.2d 415, 428 (La.1982), the Louisiana Supreme Court stated:
Before this court will reverse a conviction on the basis of improper argument, it must be thoroughly convinced that *200 the argument contributed to the verdict. The trial court properly charged the jury that the statements and arguments made by attorneys are not evidence, that the opening statements and closing arguments are not to be considered as evidence. Thus, it appears that any possible prejudice from the prosecutor's remark was cured by the trial judge's charge to the jury. (Citations omitted.)
Likewise, in the instant case, the trial court charged the jury, once before trial and once after trial, that opening statements and closing arguments are not to be considered as evidence. Although defense counsel objected to the prosecutor's comment, there was no request, pursuant to LSA-C.Cr.P. art. 771, for an admonition of the jury. The defendants cannot now cite the failure to give an admonishment as error when they failed to request one at trial.
Defendants also contend that the prosecutor's reference to God was prejudicial. The record contains no contemporaneous objection to the "Thank God" remark by the prosecutor. Therefore, this allegation has not properly been preserved for appeal. LSA-C.Cr.P. art. 841.
Finally, in responding to defense attorney's closing argument that his client, Chad Gunnells, should have, at best, been charged with a misdemeanor, the prosecutor countered with the following statement:
"Don't be fooled by good defense attorneys which they are, into believing that this is a little battery. They said well maybe we couldmaybe if they committed other crimes they should have charged them with this and they should have charged them with that. I'm the district attorney in this case. And I tell you what I thought about doing. And what I should have done probably is charged them with attempted murder."
At that point, the defense attorney objected and orally moved for a mistrial which the court overruled.
Defendants allege this particular comment falls under the scope of LSA-C.Cr.P. art. 770(2), which states:
Upon motion of a defendant, a mistrial shall be ordered when a remark or comment, made within the hearing of the jury by the judge, district attorney, or a court official, during the trial or in argument, refers directly or indirectly to:
. . . .
(2) Another crime committed or alleged to have been committed by the defendant as to which evidence is not admissible;
Contrary to defendants' assertion, LSA-C.Cr.P. art. 770(2) is not applicable to the prosecutor's comment about his ability to charge the defendants with attempted murder instead of second degree battery. This reference to attempted murder dealt with the charge presently before the jury, and therefore, under a plain reading of the statute, was not "[a]nother crime ... to which evidence is not admissible." Therefore, these comments fall outside the parameters of LSA-C.Cr.P. art. 770 dictating a mandatory mistrial and are better governed by LSA-C.Cr.P. art. 771, wherein either a mistrial or an admonition may be granted. After reviewing the record, we find that the trial court did not abuse its discretion in denying defendants' motion for mistrial and therefore, the trial court's determination should not be disturbed. See State v. McFerson, 583 So.2d 516 (La.App. 3d Cir.), writ denied, 588 So.2d 113 (La.1991). Furthermore, after this denial of defendants' motions, defense counsel failed to request that an admonition be given. Because defense counsel did not request the jury be admonished to disregard this comment, defendants cannot now, on appeal, cite the failure to give an admonishment as error.
In any event, even considering the prosecutor's remarks collectively, none were sufficiently prejudicial to establish a finding that the comments unduly influenced the jury or contributed to the guilty verdicts. The record contains sufficient evidence that Chad Gunnells and Kenneth Gunnells repeatedly beat and/or kicked Detective Lemoine, resulting in permanent damage. It is this evidence and not a few isolated comments from the prosecutor that resulted in the convictions of defendants. *201 Notably, courts generally review assignment errors as to prosecutor's remarks so as to "afford credit to the good sense and fair-mindedness of the jurors who heard the evidence presented at trial." State v. Weidert, 568 So.2d 1162, 1167 (La. App. 5th Cir.1990), writ denied, 573 So.2d 1118 (La.1991). As such, we find this assignment of error lacks merit.

SUFFICIENCY OF EVIDENCE
By these assignments of error, defendants allege the trial court erred in denying their motions for post verdict judgment of acquittal or in the alternative, for a new trial. Both defense motions requested relief on the grounds that the prosecutor made improper remarks during rebuttal argument as well as the allegation that there was insufficient evidence to convict the defendants of the crime of second degree battery. Again, on appeal the defendants allege the evidence presented during trial was legally insufficient. Based upon our discussion in the previous assignment of error, our discussion will be limited to a determination of the adequacy of the evidence presented at trial.
Defendants argue that the evidence presented by the state was legally insufficient to convict them of the offense of second degree battery which is defined by LSA-R.S. 14:34.1, as follows:
Second degree battery is a battery committed without the consent of the victim when the offender intentionally inflicts serious bodily injury.
For purposes of this article, serious bodily injury means bodily injury which involves unconsciousness, extreme physical pain or protracted and obvious disfigurement, or protracted loss or impairment of the function of a bodily member, organ, or mental faculty, or a substantial risk of death.
Defendants contend that an issue remains as to whether the victim sustained "serious bodily injury." We note that the courts are not overly strict in determining what injuries received as a result of a battery are considered serious bodily injuries as defined by LSA-R.S. 14:34.1. See State v. Accardo, 466 So.2d 549 (La.App. 5th Cir. 1985), writ denied, 468 So.2d 1204 (La. 1985). Furthermore, the testimony of experts is not necessary, and the testimony of the victim or a witness may present sufficient evidence of this element of the crime. See State v. Mullins, 537 So.2d 386 (La. App. 4th Cir.1988); State v. Legendre, 522 So.2d 1249 (La.App. 4th Cir.), writ denied, 523 So.2d 1321 (La.1988); State v. Walker, 432 So.2d 1057 (La.App. 3d Cir.1983). However, testifying at trial, Dr. L.J. Mayeaux gave his expert opinion about the injuries sustained by the victim, Clint Lemoine. Multiple bruises were found from the base of the skull down into the scapula resulting in complete traumatization. Both arms had multiple abrasions and the facial exam showed multiple hematomas above and below both eyes and cheeks as well as the chin. Multiple bruises were also located on the anterior and posterior chest. X-rays of the nasal area showed that there was a fracture with a displacement of the nasal bone and a deep laceration on the mouth which required fifty to sixty stitches. As a result of this altercation, Lemoine will require nasal surgery and will be permanently scarred.
Under the Jackson v. Virginia standard, when the issue of sufficiency of evidence is raised on appeal, the critical inquiry of the reviewing court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.
In order for the state to obtain a conviction, it must prove the elements of the crime beyond a reasonable doubt. We find that ample evidence of serious bodily injury beyond a reasonable doubt was provided at trial. Therefore, we find this assignments of error without merit.

CONCLUSION
Based upon the foregoing, we affirm the judgment of the trial court. The convictions of Chad Gunnells and Kenneth Gunnells, *202 defendants and appellants herein, are hereby affirmed.
AFFIRMED.
NOTES
[1] The District Attorney's office did not prosecute this case.
[2] Additionally, we note that the defendants were not charged with LSA-R.S. 14:34.2, battery of a police officer, wherein knowledge by the defendant that his victim is a police officer, is crucial.