I «SOL GOTHARD, Judge.
The defendants, Samantha Hall, Zipora A. Hall, and Alisha Powell, were each convicted of second degree battery in violation of LSA-R.S. 14:34.1. Thereafter, the trial court sentenced Samantha Hall to imprisonment at hard labor for two years, suspended, and placed her on active probation for two years. She was also ordered to serve six months on home incarceration and to pay $154.03 in restitution. The trial court imposed the same sentence on Zipo-ra A. Hall. The trial court sentenced Alisha Powell to imprisonment at hard labor for four years, suspended, and placed her on active probation for four years, with the special condition that she serve one year in parish prison and pay restitution in the amount of $154.03.[1] This appeal followed.
At the trial of this matter, the State called Trenice Harris (the victim), Enus Smith, Latasha Reese, and Deputy Donald Dubroe as witnesses at trial.
Ms. Harris testified that, on January 25, 2003, at approximately 12:30 a.m., she and her friends, Enus Smith (also known as “Michelle”) and Latasha Reese, |swent to the Platinum Club in Metairie to see a male strip show. When they entered the club, they sat at the bar. A song came on that Ms. Harris liked, so she went out onto the dance floor and started dancing. Defendant, Samantha Hall, came up behind her, grabbed her on the right shoulder and said, “B ...., didn’t I tell you.”
When Ms. Harris turned around she saw the three defendants around her. Ms. Harris explained that the three women were her cousins, and that she had known them all her life. Samantha Hall grabbed Ms. Harris’s hair, and they all sprayed her in the face with Mace. Ms. Harris’s eyes started burning. When they got Ms. Harris on the ground, a man stomped and kicked her. Ms. Harris later learned from Ms. Smith and Ms. Reese that the man was Ms. Powell’s husband. Samantha Hall straddled her the whole time.
Ms. Powell and Zipora Hall kicked and punched Ms. Harris, pulled her hair, and sprayed her again. Ms. Harris heard Samantha Hall say, “B...., I’m going to kill you.” Ms. Harris testified that she was subsequently hit by someone with a Heineken beer bottle. She heard Ms. Powell say, “Momma, we’re going to kill her.” Ms. Harris testified that Anthony Clay (also known as “Tony”), Samantha Hall’s boyfriend who was also the disc jockey (DJ), came over and told them to stop fighting, but he did not pull the defendants off of her. Ms. Harris testified that the incident lasted approximately 45 minutes.
The beating eventually stopped, and Ms. Harris crawled to the front door. She asked for help, but none was forthcoming, so she walked across Airline Highway to the Spur gas station. The men at the gas station called the police. An ambulance subsequently arrived. Ms. Harris testified that the medical personnel first diluted her eyes because she was in so much pain and gave her two pain shots. Ms. Harris further testified that she could not breathe and that she felt like her esophagus was swollen. She thought that she was bleeding from her eyes and her nose.
*560 |4An officer came from across the street and told Ms. Harris that he had three suspects for her to identify. Ms. Harris explained that the medical attendants did not want to bring her back to the club because she was bleeding too badly, but she insisted. The ambulance subsequently brought Ms. Harris over to the Platinum Club, and she positively identified defendants.
Ms. Harris was then taken to Ochsner Hospital where she got 15 stitches on different sections of her nose where the bottle hit her. She explained that she could not blow her nose for two weeks following the incident. Her eyes were diluted at least four times before she regained decent sight. She stayed with her family in Independence for the next eight days and left her children at home, because she did not want them to see what she looked like.
Ms. Harris identified State’s Exhibits 4A, B, and C as photographs that a member of her family took of her injuries the same day as the incident, and testified that they accurately depicted the injuries she suffered in the incident. Ms. Harris indicated that she went to a plastic surgeon twice so that they could monitor the healing process to determine whether plastic surgery was necessary. She received physical therapy for her shoulder at Care Orthopedic.
Ms. Smith and Ms. Reese testified at trial, and their testimony largely corroborated that of Ms. Harris. Additionally, Ms. Smith testified that she got up to try and stop the fight, but got sprayed with Mace by Zipora Hall. Ms. Smith further testified that Ms. Reese also tried to stop the fight by grabbing Ms. Powell; however, Ms. Powell hit Ms. Reese in the face with some keys and sprayed her with Mace.
Deputy Dubroc testified that he was dispatched to the 100 block of Airline Highway in response to a female bleeding. When he arrived at the Spur station, a black female, later identified as Ms. Harris, was standing in the parking lot, |fibleeding from the face, and she had numerous other scratches and abrasions on her body.
Deputy Dubroc explained that Ms. Harris was screaming that her face was burning, and he could smell a faint odor of pepper spray. Ms. Harris was hysterical and crying in pain. She told him how she had been beaten úp, and he tried to calm her down. Deputy Dubroc testified that the medical attendants treated Ms. Harris on the scene, but said that they had to take her to the hospital because of the extent of the laceration on her nose.
Ms. Harris gave Deputy Dubroc the names and the descriptions of the defendants. Deputy Dubroc, in turn, broadcast that information over the radio to officers at the Platinum Club. The medical unit subsequently brought Ms. Harris over to the club where she positively identified the defendants.
The defense called Samantha Hall, Zipo-ra Hall, Alisha Powell, Anthony Clay, Van Johnson, and Delisia Hall as witnesses at trial.
Samantha Hall acknowledged fighting with Ms. Harris; however, she claimed that Ms. Harris started the fight by hitting her and then pushing her in the back of the head.
Zipora Hall denied being involved in the fight with Ms. Harris; however, she observed Ms. Harris and Samantha Hall fighting on the dance floor.
Ms. Powell testified that, prior to the fight, she observed Ms. Harris shove Samantha Hall in the back of the head without any provocation. Her testimony indi *561 cated that she was not involved in the fight with Ms. Harris.
Mr. Clay testified that Ms. Harris shoved one of the defendants first, and then the two of them started fighting. He estimated the time of the fight at four minutes, and stated that no man came in with the defendants.
Mr. Johnson, the manager of the Platinum Club, testified that defendants and Ms. Harris were his cousins. He explained that he observed the fight but did not |Bknow how it started. Mr. Johnson further testified that the fight lasted approximately four or five minutes, that he did not see a man kicking Ms. Harris, and that no Mace was discharged in the bar. He stated that he found no broken bottles, glass, knives, or weapons, but that almost all women had pepper spray cans on their key rings.
In defendants’ sole assignment of error, they argue that there is insufficient evidence to support the verdicts because the evidence presented at trial did not establish that the victim suffered serious bodily injury as defined by LSA-R.S. 14:34.1.
The constitutional standard for testing the sufficiency of the evidence is set out in Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), and requires that a conviction be based on proof sufficient for any rational trier of fact, viewing the evidence in the light most favorable to the prosecution, to find the essential elements of the crime beyond a reasonable doubt. State v. Rosiere, 488 So.2d 965 (La.1986).
LSA-R.S. 14:34.1 defines second degree battery as follows:
Second degree battery is a battery committed without the consent of the victim when the offender intentionally inflicts serious bodily injury.
For purposes of this article, serious bodily injury means bodily injury which involves unconsciousness, extreme physical pain or protracted and obvious disfigurement, or protracted loss or impairment of the function of a bodily member, organ, or mental faculty, or a substantial risk of death.
To convict a person of second degree battery, the State must prove the following elements beyond a reasonable doubt: (1) the intentional use of force or violence upon the person of another; (2) without the consent of the victim; and (3) when the offender intentionally inflicts serious bodily injury. State v. Fuller, 414 So.2d 306 (La.1982).
|vDefendants contend that the State failed to offer any evidence of serious bodily injury by way of testimony from the fact witnesses. They point out that the State did not present testimony from medical witnesses or medical records which would prove this factor. They claim that there was no explanation of what medical services were provided to the victim concerning the alleged severity of her injury. Defendants argue that, because the jury had to infer the severity of the injury (since the State failed to offer any evidence on that issue by way of fact witnesses, medical witnesses, or medical records), the State failed to prove beyond a reasonable doubt that the victim suffered serious bodily injury as set forth in the statute.
We find that the State presented sufficient evidence to support the finding that the victim suffered serious bodily injury.
Ms. Harris testified that she was sprayed in the face with Mace, beaten, and kicked by the defendants. She explained that, as a result of the incident, her eyes burned, she could not breathe, and she felt like her esophagus was swollen. She thought she was bleeding from her eyes *562 and her nose. Ms. Harris testified that an ambulance arrived at the scene, and that medical personnel first diluted her eyes, because she was in “so much pain,” and she was bleeding badly. Ms. Harris received 15 stitches on different sections of her nose where the bottle hit her, and she could not blow her nose for two weeks following the incident. Her eyes were diluted at least four times before she regained decent vision, which she needed to use the computer. Further, at the instruction of the treating physician, Ms. Harris went to a plastic surgeon twice so they could monitor the healing process to determine whether plastic surgery would be necessary.
Ms. Smith testified at trial that she went to see Ms. Harris at the hospital after the incident, that Ms. Harris’ condition was “horrible,” and that her nose was all “stitched up” and “pieced up.”
|sWe believe that the State introduced ample evidence to prove beyond a reasonable doubt that the victim sustained serious bodily injury. The evidence clearly shows that the victim was in extreme physical pain, and that there was loss of the function of her nose for a two-week period and obvious disfigurement of her nose after the incident. Compare State v. Accardo, 466 So.2d 549 (La.App. 5 Cir. 1985), writ denied, 468 So.2d 1204 (La. 1985); State v. Fortino, 02-708 (La.App. 5 Cir. 12/30/02), 837 So.2d 684, 688, writ denied, 03-251 (La.5/9/03), 843 So.2d 395.
Defendants also argue that the evidence was insufficient to prove serious bodily injury, because no medical personnel testified regarding her injuries. However, the testimony of a victim or a witness may present sufficient evidence of the element of a battery of whether a victim sustained serious bodily injuries, without any testimony of experts. State v. Gun-nells, 619 So.2d 192 (La.App. 3 Cir.), writ denied, 625 So.2d 1061 (La.1993).
We find that the evidence was sufficient to prove that the victim sustained serious bodily injury within the meaning of the statute.
In this appeal, defendant requested an error patent review. We have reviewed the record for errors patent, according to LSA-C.Cr.P. art. 920; State v. Oliveaux, 312 So.2d 337 (La.1975); State v. Weiland, 556 So.2d 175 (La.App. 5 Cir.1990), and find the following error.
The transcript of the sentencing hearing in this matter indicates that the trial judge did not set a specific amount to be paid in restitution. Instead, the Court stated that total restitution would be $154.03 “at a minimum or as determined by the Department of Probation and Parole.” The court further stated that the restitution would be “joint, severally, and in solido,” and that while each of the three defendants would be required to pay her fair share, each would also be responsible if the other did not pay.
|flWe find that the trial judge erred in three respects: (1) by not advising each defendant of the exact amount of restitution that they were required to pay; (2) by not clarifying what he meant by joint, several, and in solido liability, which are civil terms that lay persons probably would not understand; and (3) by not stating whether restitution was being ordered as a condition of probation under LSA-C.Cr.P. arts. 893 and 895(7) or as a part of the sentence under LSA-C.Cr.P. art. 883.2.
Accordingly, we vacate the sentences and remand for resentencing for the trial court to set a determinate amount of restitution. See State v. Berkeley, 00-1900 (La.App. 5 Cir. 5/30/01), 788 So.2d 647, 656, writ denied, 01-1659 (La.4/26/02), 814 So.2d 549.
*563 For the above discussed reasons, the convictions of defendants, Samantha Hall, Zipora A. Hall and Alisha Powell are affirmed. The sentences imposed on each defendant are vacated and the matter is remanded for resentencing.
CONVICTIONS AFFIRMED; SENTENCES VACATED AND CASE REMANDED.

. The trial court also imposed other general and special conditions of probation on each defendant which are not at issue.