JUDE G. GRAVOIS, Judge.
[¿Defendant, Alfred Christophe, appeals his convictions for two counts of first degree vehicular negligent injuring, a felony, and one count of vehicular negligent injuring, a misdemeanor, arising out of an April 7, 2011 vehicular accident he was involved in. On appeal, defendant argues that the evidence was insufficient to establish one of the elements of these crimes — that he was under the influence of alcoholic beverages at the time of the accident. For the *937 following reasons, we find that there was insufficient evidence to convict defendant of these charges, and accordingly, reverse defendant’s convictions for first degree vehicular negligent injuring and vehicular negligent injuring, and remand the matter to the trial court for entry of three judgments against defendant of guilty of negligent injuring, and for sentencing thereon pursuant to LSA-R.S. 14:39.

|sPROCEDURAL HISTORY

On May 25, 2011, the Jefferson Parish District Attorney filed a bill of information charging defendant, Alfred Christophe, with two felony counts of first degree vehicular negligent injuring, concerning victims Tamyra Gardner and Alicia Broome, in violation of LSA-R.S. 14:39.2. On that same day, defendant was also charged in a separate bill of information with one misdemeanor count of vehicular negligent injuring, arising out of the same incident, concerning victim Alton Heard, in violation of LSA-R.S. 14:39.1. On May 26, 2011, defendant was arraigned and pled not guilty to all charges. On August 31, 2011, defendant waived his right to a trial by jury as to the felony first degree vehicular negligent injuring charges. On September 12, 2011, defendant’s motions to suppress evidence and statement were denied.
This matter proceeded to a bench trial on all three charges on September 15, 2011 and September 26, 2011. At the conclusion of the trial, the trial judge returned a verdict of guilty as charged as to all three charges. After the trial judge announced his verdict, defendant waived sentencing delays and was immediately sentenced to two years and six months imprisonment at hard labor on each of the felony counts of first degree vehicular negligent injuring, to be served concurrently. Defendant was further sentenced to six months imprisonment on the misdemeanor count of vehicular negligent injuring, to run concurrently with the sentences imposed in the felony convictions.
On October 6, 2011, defendant filed separate motions to appeal his felony and misdemeanor convictions. On February 9, 2012, this Court granted defendant’s Motion to Consolidate his appeals.[1]

J¿FACTS

Accordingly to the testimony adduced at trial, on the evening of April 7, 2011, defendant and his girlfriend, Keshawn Jones, had an argument involving the breaking off of their relationship. Ms. Jones testified that defendant was very upset about this argument and threatened to do harm to himself, specifically telling her that “he was going to jump off the bridge.” She also testified that she saw defendant drink one beer during the evening of their argument.
Deputy Johnny Petit, Jr. of the Jefferson Parish Sheriffs Office testified that on April 7, 2011, he received a radio dispatch call concerning defendant’s threatened suicide, prompting him to canvass the area of Burmaster Street in Gretna near the Mississippi River levee. He located defendant’s truck and then found defendant sit *938 ting by the Mississippi River drinking a forty-ounce beer. Deputy Petit explained to defendant that he was called to investigate a possible suicide attempt. Defendant responded that he did not want to kill himself; he “just wanted to come out here, smoke a cigarette and drink my beer just to relax.” Because of the nature of the call, Deputy Petit placed defendant in handcuffs and took him to West Jefferson General Hospital for a mental health evaluation. The police report done in connection with this incident indicated that defendant was transported to the hospital at 8:06 p.m. and was released from the hospital at 9:00 p.m.
Alton Heard, the victim in the misdemeanor case, testified that he was driving his taxi-cab down the Westbank Expressway at “about roughly nine, ten |so’clock” on April 7, 2011 when he heard skidding tires immediately before his vehicle was struck from behind. As a result of this collision, Mr. Heard’s leg was jammed underneath his cab’s steering column and his shoulder was bruised; however, he declined the opportunity to go to the hospital for treatment of his injuries. Mr. Heard testified that his leg was still bruised more than a week or two after the accident; the bruise on his shoulder remained for a couple of days after the accident. He had soreness for a while after that as well.
Tamyra Gardner testified that during the evening of April 7, 2011, she was driving her car on the Westbank Expressway near the Terry Parkway exit with her son and Alicia Broome when her car was hit. Ms. Gardner lost consciousness as a result of the accident and was transported by ambulance to West Jefferson General Hospital. As a result of the accident, Ms. Gardner testified that she sustained many bruises to her left leg, and had back pain, chest pain, and constant headaches. She also testified that her son suffered from back pain and underwent therapy as a result of this accident. Her medical records from West Jefferson General Hospital were introduced into evidence.
Alicia Broome, a passenger in Mr. Gardner’s vehicle, testified that she had no recollection of the accident; she was not even aware that she was in an accident until she woke up the following day. As a result of the accident, Ms. Broome testified that she suffered from neck and back pain, a cut lip, and braises on her leg. Her medical records from West Jefferson Medical Center were also introduced into evidence.
Joseph Jones testified that he observed the three-car accident involving defendant, Mr. Heard, and Ms. Gardner, while standing in a restaurant parking lot at the intersection of Terry Parkway and the West-bank Expressway. Mr. Jones stated that he observed defendant’s truck come off the bridge at a high rate of Rspeed, and proceed to “go really, really fast,” hit a car, and then a tree, causing defendant’s truck to tip on its side. Mr. Jones ran over to the truck, but by the time he got there, defendant had already gotten out and had begun running away from the truck. Defendant was eventually detained by two bystanders.
Deputy Jeffery Jobin of the Jefferson Parish Sheriffs Office testified that on April 7, 2011, he had just left from work at approximately 11:00 p.m. when he came upon the accident. Deputy Jobin first went to aid the men who had detained defendant. The men advised him that defendant was trying to leave the scene. Deputy Jobin spoke to defendant, but defendant would not answer any of his questions. Defendant was then escorted to Deputy Jobin’s vehicle to wait for an ambulance.
Deputy Tammy Philley, who was employed by the Crescent City Connection *939 Police Department at the time of the accident, testified that she arrived on the scene shortly after the accident and spoke to defendant. Deputy Philley stated that defendant gave her his name, but told her that he did not recall anything about the accident. Defendant was then taken by ambulance to University Hospital in New Orleans for treatment of injuries he received in the accident. Later at the hospital, Deputy Philley advised defendant of his Miranda[2] rights. He was- arrested in connection with the traffic accident upon his release from the hospital.
John Lemmon, Keshawn Jones’s father, testified that he called the police on April 7, 2011 because defendant threatened “to jump off the bridge.”[3] According to Mr. Lemmon, earlier that day, they all had been sitting around, having “a couple of beers.” Specifically, Mr. Lemmon recalled defendant to have consumed one 32-jounce7 beer, and a “little shot” of Mad Dog 20/20 wine. After defendant was released from West Jefferson General Hospital later that evening, Mr. Lemmon spoke to him by telephone and based on that conversation, believed that defendant was “out of his mind,” and going to set himself on fire.
Upon conclusion of testimony by the State’s witnesses, the defense rested without presenting any evidence.
The trial court found defendant guilty on all charges as charged. In rendering its verdicts, the trial court stated:
I listened carefully to the testimony and, I’ve got to be quite honest with you, I took some time to think about your case. There’s no question that you were having a bad day on that date and time. Your girlfriend, Ms. Jones, testified that you threatened suicide, that you were drinking at the time, and her father has come in today and did, in fact, corroborate the fact that you were drinking and that you were pretty upset that date. His testimony added a little bit in the sense that we had testimony of a 40-ounce beer on the levee which was being consumed, and we also had 32 ounces at the house, and then we had a sip of what he considers to be a sip of Mad Dog 20/20, which is a wine beverage. And all that stuff started to occur around 7:14— let’s just say for argument’s sake 7:15 in the afternoon. And then four hours later you were involved in this incident at the foot of the expressway and Terry Parkway coming off the elevated expressway. Four hours.
Worse case scenario, you consumed— if it’s 40 and 32, you consumed close to 12 — There are 12 ounces in a beer.
[[Image here]]
Yes, six — close to six drinks. And taking it to the other end of the spectrum, it would be close to four, four drinks. Having four drinks, the body, I have to take judicial notice, and I’ll tell you that we are all quite aware, that the body consumes or processes .015 of alcohol in an hour. So, based upon that, it is quite clear to me that you were still under the influence of alcohol. Because your body, even the best case scenario, you still would have had alcohol in your system.
*940 Based upon the testimony of all the witnesses — Deputy Petit also saw you drinking beer on the levee. So, there is no doubt in my mind that you did, in fact, have beer in your system. And I want you to understand that the law does not require that you be quote, unquote, intoxicated to the extent that it’s .08 or above. It’s if you are under the influence, that you had alcohol in your system. And I do find that you did.
| ^ASSIGNMENT OF ERROR — Sufficiency of the evidence
In his only assignment of error in these consolidated appeals, defendant argues that the evidence was insufficient to support the verdicts in this case because the State failed to prove that he was under the influence of alcoholic beverages at the time of the accident. Defendant maintains that although the State presented evidence that he had consumed some alcoholic beverages that evening, there was no proof that he was under the influence of alcoholic beverages at the time of the accident. Specifically, defendant argues that there was a lack of testimony detailing any behavioral manifestations of alcohol intoxication. Thus, defendant requests that this Court set aside the convictions and sentences imposed, enter verdicts of the lesser and included offenses of guilty of three counts of negligent injuring, pursuant to LSA-R.S. 14:39, and remand the matter to the trial court for resentencing.
In response, the State admits that it did not produce any evidence of the defendant’s blood alcohol concentration and that the State’s witnesses did not testify as to any behavioral manifestations of alcohol intoxication. However, the State contends that it did produce testimonial evidence that established that defendant drank a 32-ounce beer at approximately 7:00 p.m., that defendant was seen drinking a 40-ounce beer at approximately 8:00 p.m., and that defendant was involved in the subject multi-vehicle accident at approximately 11:12 p.m. Thus, the State maintains that it proved defendant consumed 72 ounces of beer within four hours, and that defendant was, therefore, under the influence of alcohol at the time of the accident. Moreover, the State asserts that defendant did not present any evidence to contradict the State’s witnesses, and that defendant did not deny that he had been drinking beer.

¡¿LAW AND ANALYSIS

The constitutional standard for testing the sufficiency of the evidence is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier-of-faet could have found the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560, 573 (1979).
An appellate court, in reviewing the sufficiency of evidence, must determine if the evidence, whether direct or circumstantial, or a mixture of both, viewed in the light most favorable to the prosecution, was sufficient to convince a rational trier-of-faet that all of the elements of the crime have been proven beyond a reasonable doubt. State v. Sosa, 05-213 (La.1/19/06), 921 So.2d 94, 99. Additionally, when circumstantial evidence forms the basis of the conviction, the evidence, assuming every fact to be proved that the evidence tends to prove, must exclude every reasonable hypothesis of innocence. LSA-R.S. 15:438; Id.
In this case, defendant was charged and convicted of two counts of first degree vehicular negligent injuring, and one count of vehicular negligent injuring. In order to obtain a conviction for first degree vehicular negligent injuring, the State must prove beyond a reasonable *941 doubt that defendant was driving a vehicle which caused “serious bodily injury” to someone, and that the defendant was “under the influence of alcoholic beverages” at the time of the accident. LSA-R.S. 14:39.2; State v. Berkeley, 00-1900 (La.App. 5 Cir. 5/30/01), 788 So.2d 647, writ denied, 01-1659 (La.4/26/02), 814 So.2d 549. Further, in order to obtain a conviction for vehicular negligent injuring, the State must prove beyond a reasonable doubt that defendant was driving a vehicle which caused “any injury” to someone, and that the defendant was “under the influence of alcoholic | mbeverages” at the time of the accident. LSA-R.S. 14:39.1. Here, defendant does not contest that he was driving a motor vehicle and was involved in the accident which caused injury to the victims, as evidenced by his request that this Court set aside his convictions and sentences and enter verdicts to the lesser and included offense of guilty of negligent injuring, pursuant to LSA-R.S. 14:39. Therefore, the only matter at issue here is whether the State proved beyond a reasonable doubt that defendant was “under the influence of alcoholic beverages” at the time of the accident.
The terms “while under the influence of intoxicating liquor” or “while in an intoxicated condition” are commonly used terms with a well-recognized meaning.[4] State v. Hightower, 238 La. 876, 116 So.2d 699 (1959). In Hightower, the State appealed from the trial court’s granting of the defendant’s motion to quash the bill of information charging the defendant with unlawfully operating a motor vehicle while under the influence of alcohol, on the ground that the statute failed to define what constituted “under the influence of alcoholic beverages.” The Louisiana Supreme Court reversed, finding that the statute clearly stated the crime sought to be punished. In reaching its conclusion, the Court explained:
Our lawmakers, in adopting the Criminal Code, following rules of law generally obtaining in the interpretation of criminal statutes, i.e., that such statutes must be strictly construed, declared that nevertheless, all of its provisions shall be given a genuine construction, according to the fair import of their words, taken in their usual sense, in connection with the context, and with reference to the purpose of the provision.
[[Image here]]
While many states have adopted statutes providing that the results of chemical tests raise certain presumptions as to whether or not the defendant is intoxicated and others have accepted the use of such tests without statutory authority, but with court approval, 1 n nevertheless even in those states other competent evidence may be used to establish the guilt or innocence of the accused; and although there are some variations in the language of the tests employed in the different jurisdictions, e.g., ‘the expression, ‘under the influence of intoxicating liquor,’ covers not only all the well known and easily recognized conditions and degrees of intoxication, but any abnormal mental or physical condition which is the result of indulging in any degree in intoxicating liquors, and which tends to deprive him (the driver) of that clearness of intellect and control of himself which he would otherwise possess;’ ‘Intoxication, within *942 the meaning of the statute, means such a condition as impairs to some extent, however slight it may be, the ability of a person to operate an automobile;’ ‘Under the influence of intoxicating liquors’ means what common usage has ascribed to the word, to wit: Not that he should be intoxicated to the extent that his faculties are completely impaired, but only that degree of influence which looses the bonds of self-restraint and causes him to operate his car in a manner different from that in which it would be operated by an ordinarily cautious and prudent person; [T]hese variations do not alter the substance of the offense and, we think, that the terms ‘intoxicated’ or ‘under the influence of alcoholic beverages’ have a certain and well-understood meaning, i.e., a person is intoxicated within the provisions of the statute when he does not have the normal use of his physical and mental faculties by reason of the use of alcoholic beverages (or narcotics), thus rendering such person incapable of operating an automobile in a manner in which an ordinarily prudent and cautious man in full possession of his faculties, using reasonable care, would operate a motor vehicle under like conditions.
Id.,Id., 116 So.2d at 702-03 (internal citations omitted).
Most of the cases involving the issue of whether a defendant was intoxicated or under the influence of alcoholic beverages at a particular time contain detailed testimony and information regarding observed behavioral manifestations of the defendant at the pertinent time. Some courts have found that the evidence presented did not sufficiently prove the defendant to be intoxicated,[5] while other courts have found otherwise.[6] As such, the issue of the level of the defendant’s intoxication at the pertinent time must be determined on a case-by-case basis.
li2At trial, Keshawn Jones testified that she saw defendant consume one beer on the date in question. John Lemmon, Ms. Jones’s father, confirmed this, testifying that he observed defendant consume “one 32 ounce beer.” He further testified that defendant also had a “little shot” of Mad Dog 20/20 wine. Neither of these *943 witnesses testified, however, as to the exact time defendant drank the beer and wine, other than to state that it was “in the evening.” However, based on the time Mr. Lemmon made the 911 call concerning defendant’s suicidal threats, which was after defendant had left Ms. Jones’s house, the trial court assumed that defendant had consumed the 32-ounce beer around 7:14 p.m.
Next, Deputy Petit testified that in responding to the 911 call, he located defendant by the Mississippi River “drinking a 40 ounce beer.” In his testimony, Deputy Petit did not, however, indicate how much of the 40-ounee beer defendant had actually consumed. Rather, Deputy Petit’s testimony indicated that defendant was cooperative, and willingly accompanied him to the hospital for an evaluation regarding his suicidal intentions. And despite his interactions with defendant, Deputy Petit offered no testimony whatsoever as to any behavioral and physical symptoms of defendant consistent with someone who was under the influence of alcoholic beverages at that time. Also, the defense noted that the police report done in connection with the 911 call indicated that defendant was picked up by Deputy Petit at 8:06 p.m. and was released from the hospital at 9:00 p.m., tending to indicate that defendant’s consumption of the unknown quantity of the 40-ounce | isbeer occurred sometime before 8:00 p.m. Then approximately two to three hours after being released from the hospital, defendant was involved in the instant vehicular accident.
Based on the aforementioned testimony, for the following reasons, we find that, after viewing the evidence in the light most favorable to the prosecution, any rational trier-of-fact could have not found that one of the essential elements of the crimes in question — that defendant was “under the influence of alcoholic beverages” at the time of the accident in question — was established beyond a reasonable doubt. Defendant was released from the hospital less than an hour after being admitted, indicating that defendant was not a threat to himself or others at that time. Deputy Petit did not testify as to any behavioral or physical manifestations of defendant of alcohol consumption at the time he encountered defendant near the River. Additionally, the trial court even noted that defendant was “very cooperative” and did not give Deputy Petit “any cause to be concerned.” The evidence introduced also leaves much uncertainty as to the quantity of alcoholic beverages defendant consumed, thus rendering the trial court’s “formula” as to the amount of alcohol in defendant’s system at the time of the accident in question speculative at best.[7] Further, there were no alcoholic beverages found in defendant’s truck at the time of the accident. Finally, there was no testimony from any of the witnesses or officers at the scene of the accident to the effect that defendant exhibited any behavioral manifestations at that time suggesting that he was under the influence of alcoholic beverages at the time of the accident. The mere fact that the accident occurred in the manner that it did does not establish 114beyond a reasonable doubt that defendant was under the influence of alcoholic beverages at the time of the accident.
Therefore, given the evidence and testimony presented at trial, we find that *944 the evidence introduced was insufficient to support beyond a reasonable doubt the element of defendant being “under the influence of alcoholic beverages” at the time of the accident for the crimes charged. We accordingly reverse defendant’s convictions for two counts of first degree vehicular negligent injuring and one count of vehicular negligent injuring. However, based upon our review of the record, we find that the evidence introduced subjected to the Jackson standard supports convictions of defendant for three counts of the lesser and included offense of negligent injuring under LSA-R.S. 14:39. Accordingly, we remand the matter to the trial court with instructions for entry of three judgments against defendant of guilty of negligent injuring, and for sentencing thereon pursuant to LSA-R.S. 14:39. See State v. Byrd, 385 So.2d 248 (La.6/23/80); LSA-C.Cr.P. art. 821(E); and State v. Hart, 96-0697, pp. 16-17 (La.3/7/97), 691 So.2d 651, 661-62. See also State v. Crockett, 583 So.2d 593, 598 (La.App. 4 Cir. 6/27/91).

ERRORS PATENT DISCUSSION

The record was reviewed for errors patent, according to LSA-C.Cr.P. art. 920; State v. Oliveaux, 312 So.2d 337 (La.1975); and State v. Wetland, 556 So.2d 175 (La.App. 5 Cir.1990). We find no errors patent that require correction.

CONCLUSION

For foregoing reasons, we hereby reverse defendant’s convictions for first degree vehicular negligent injuring and vehicular negligent injuring, and remand 11sthe matter to the trial court for entry of three judgments against defendant of guilty of negligent injuring, and for sentencing thereon pursuant to LSA-R.S. 14:39.

CONVICTIONS REVERSED; REMANDED WITH INSTRUCTIONS

. As indicated above, one of defendant's convictions is for vehicular negligent injuring, a misdemeanor. The proper procedural vehicle for a defendant to seek review of a misdemeanor conviction is by application for a writ of review. LSA-C.Cr.P. art. 912.1 C(l). However, as noted, this Court granted defendant's Motion to Consolidate the felony and misdemeanor appeals in this case, No. 12-KA-82 and No. 12-KA-83. Thus, defendant asserts that in view of the consolidated trials and appeals, with all charges arising out of one incident, judicial economy warrants this Court viewing the appeal on the misdemeanor as the equivalent of a writ application. Accordingly, considering this Court’s grant of defendant’s Motion to Consolidate, both defendant’s felony and misdemeanor convictions will be addressed simultaneously in the instant appeal.

. Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

. Mr. Lemmon’s 911 calls, which were introduced into evidence and played for the trial judge, confirmed his testimony. The tape further established that the two 911 calls were made at 7:14 p.m. and 7:23 p.m., respectively. The first 911 call was Mr. Lemmon’s initial call concerning defendant's suicidal intentions, and the second call was a follow-up call regarding the police progress in locating defendant.

. In State v. Dudley, 159 La. 872, 106 So. 364 (1925), the Louisiana Supreme Court, in passing on the validity of a city ordinance which prohibited the driving of a motor vehicle "while under the influence of liquor,” observed "we are of the opinion that the term 'under the influence of liquor’ has a well-recognized meaning with everyone, which is exactly synonymous with the term 'in an intoxicated condition.’ ”

. See, for example, State v. St. Amant, 504 So.2d 1094 (La.App. 5 Cir.1987), State v. Sampia, 96-1460 (La.App. 1 Cir. 6/20/97), 696 So.2d 618, and State v. Thurman, 09-8 (La.App. 3 Cir. 10/7/09), 2009 WL 3199585 (unpublished opinion).

. For example, in State v. Berkeley, 00-1900 (La.App. 5 Cir. 5/30/01), 788 So.2d 647, writ denied, 01-1659 (La.4/26/02), 814 So.2d 549, this Court found that the evidence was sufficient to establish the elements of first degree vehicular negligent injuring and that defendant as under the influence of alcoholic beverages at the time of the accident. At trial, the trooper indicated that the defendant smelled of alcoholic beverages at the hospital, and the deputy testified that while at the scene of the accident, defendant had slurred speech, smelled of alcohol, and failed field sobriety tests. Also, in State v. Clark, 97-1064 (La.App. 3 Cir. 4/1/98), 711 So.2d 738, writ granted and remanded on other grounds, 98-1180 (La.9/25/98), 726 So.2d 2, the officer was on the scene of an unrelated call when he observed the defendant park and exit his vehicle. The defendant was stumbling and staggering, and when the officer approached the defendant, he noticed a strong odor of alcohol emanating from the defendant. In addition, the defendant’s eyes were bloodshot and he was slurring his words. The officer arrested him and took him to the police station. Once there, the defendant continued slurring his words and staggering, actually falling against a wall at some point. He refused to perform any field sobriety tests or a breathalyzer test. There was also evidence that an open beer was found inside the defendant's truck. On review, the court affirmed the defendant's DWI conviction. See also State v. Delanueville, 11-379 (La.App. 5 Cir. 2/14/12), 90 So.3d 15 (includes observed behavioral manifestations).

. We further find that it was error for the trial court to take judicial notice of the rate at which a body metabolizes alcohol, when the State failed to present any evidence in this regard or ask the trial court to take judicial notice of a source of these facts, such as a medical treatise. See State v. Trahan, 534 So.2d 73 (La.App. 3 Cir.1988) (State offered no scientific evidence as to rate at which a body metabolizes alcohol.).