WINDHORST, J.
Defendant, Ernest R. Blackwell, seeks review of his conviction and sentence for the misdemeanor offense of home improvement fraud. For the following reasons, we affirm defendant's conviction, amend defendant's sentence and affirm the sentence as amended, and remand with instructions.
Statement of the Case
On November 4, 2013, the District Attorney for St. John the Baptist Parish filed a bill of information charging defendant, Ernest R. Blackwell, with the misdemeanor offense of home improvement fraud in violation of La. R.S. 14:202.1(A)(2). The State also filed a felony bill of information charging defendant with misapplication of payment by a contractor in an amount greater than one thousand dollars and engaging in business without a contractor's license. Defendant pled not guilty to all charges, and defendant's misdemeanor case was referred to the trial court's felony docket.
On January 27, 2015, the State amended the aforementioned felony bill of information to add home improvement fraud as a third count. On September 15, 2015, the State nolle prossed the home improvement fraud count contained in the felony bill of information, concluding that home improvement fraud was in fact a misdemeanor violation under the alleged facts of the case. Given that the charges in both the felony and misdemeanor cases arose from the same relevant facts, the State elected to simultaneously try defendant's felony counts by jury and the instant misdemeanor charge by bench trial. Following the simultaneous jury/bench trial held on September 15, 2015, on December 28, 2015, the trial court issued written reasons finding defendant guilty of the misdemeanor offense of home improvement fraud.[1]
On January 25, 2016, the trial court sentenced defendant on his home improvement fraud conviction to six months imprisonment without probation or suspension of sentence. After a restitution hearing, the trial court ordered defendant to pay $38,900.00 in restitution to the Calmeses.
Facts
Defendant's convictions arise from repair work done for Thomas and Michelle Calmes. Mr. and Mrs. Calmes' home in LaPlace, Louisiana, was badly damaged in 2012 by Hurricane Isaac. In mid-September of 2012, Mr. and Mrs. Calmes hired defendant to perform repair work on their home because of his competitive quote, projected timeline, and "because he portrayed himself as a contractor who would do all the subcontracting" and supervise the work. According to Mrs. Calmes, defendant indicated that he was a licensed contractor able to perform all of her home repairs and that anything he was unable to do he would hire subcontractors to do. At *1236 trial, Mrs. Calmes testified that when meeting with defendant, he gave her a flyer indicating that he was with Professional Remodeling Specialists, aka "PRS, LLC" (PRS), which contained a license number (40025) indicating an association with "Dean Walters, Residential/Commerical State Licensed Contractor," as well as two email addresses, namely "eblackwell777@yahoo.com" and "professionalrspecialists@gmail.com." Mrs. Calmes explained that she would have never hired someone who was not a licensed contractor.
Defendant personally presented Mr. and Mrs. Calmes with two contracts for repair work, which they both signed on October 11 and 13, 2012. The first contract pertained to all labor and materials for repairs to their home with a contract price of $82,500.00, and the second was for roof repairs with a contract price of $12,000.00. Mrs. Calmes testified that the company listed on the contract was "Dean Walters, d/b/a Professional Remodeling Specialists, LLC," license number 40025, and was signed on behalf of PRS by Keely Authement.[2] Defendant told the Calmeses that Ms. Authement was a company officer, that she signed all contracts, and that he and Dean Walters were co-owners of PRS. Mr. and Mrs. Calmes never met either Ms. Authement or Mr. Walters.
Work began on the Calmeses' home on October 15, 2012. At trial, Mrs. Calmes explained that the repairs to her home would be financed by insurance money paid directly to her mortgage company, Wells Fargo, who would then release payment to her and her husband. Defendant, as the contractor/owner of PRS, signed a waiver of lien, required by Wells Fargo, related to his work on the project.
Mrs. Calmes testified that she and her husband paid defendant approximately $55,000.00. An October 18, 2012 check from Mrs. Calmes' personal bank account was written out to PRS and was endorsed for deposit by Ms. Authement. An October 25, 2012 check, issued by Wells Fargo, was made out to PRS and the Calmeses. Mrs. Calmes testified that she and her husband, along with defendant and Ms. Authement, endorsed the check. A November 8, 2012 check, also issued by Wells Fargo, was made out to PRS and the Calmeses. The Calmeses and only defendant endorsed this check. The last check, dated December 7, 2012, from Wells Fargo was made out to PRS and the Calmeses. The Calmeses endorsed this check and gave it to defendant.
Mrs. Calmes recalled that once work commenced, there were problems with the sheetrock, paint, the wood flooring, and the kitchen and bathroom tile. She explained that defendant was difficult to contact, and that his subcontractors complained that defendant was not paying them for their work. Mrs. Calmes testified that while the contract stated that the price included labor and materials, the Calmeses spent approximately $8,000.00 of their own money purchasing materials at defendant's request. Defendant told the Calmeses that he would reimburse them for their purchases but he never did.
Mrs. Calmes further testified that she and her husband selected cabinets and countertops from John Sun Kitchen and Bath (John Sun) as part of the repairs to be made to their home and that defendant only paid a portion of the money owed to John Sun, claiming that the cabinets had not been installed correctly. According to Mrs. Calmes, defendant was aware that money was owed for the cabinets and informed the Calmeses that it would be paid *1237 off. However, because the bill was not paid, a lien was placed on the Calmeses' home for the outstanding amount.
The Calmeses terminated defendant's services on January 14, 2013, and filed a complaint against him with the state licensing board. They also took out an SBA loan in the amount of $39,000.00 to cover the expenses they incurred by having to hire a new contractor.
Thomas Calmes corroborated his wife's testimony, in pertinent part, confirming that defendant submitted an estimate for their home repairs from his personal email account to his wife's email, that he signed the contract given to him personally by defendant, that defendant represented to him that he was a licensed contractor, that defendant committed to doing their home repairs, and that defendant began work on their home on October 15, 2012. Mr. Calmes also testified that he contacted the licensing board before signing the contract with defendant and confirmed that the license number in the contract (40025) was a valid license. Mr. Calmes testified that they hired a second contractor to finish the repairs.
Todd Duhe, business owner of InspecTile, was qualified as a forensic expert on tile, stone, and flooring. He testified that in January of 2013, Mr. Calmes contacted him about incomplete work performed on his home. Upon inspection of the Calmeses' home, Mr. Duhe reported that the Calmeses were living in one bedroom of the house and were using the hallway bathroom. He noted several areas of concern regarding the workmanship performed on the house in the master bathroom, the hallway bathroom, the kitchen, and the wood flooring, all requiring removal and replacement of the materials used. Mr. Duhe concluded his report finding, "This entire installation reflects improper installation methods. Contractor did not follow minimum guidelines or procedures. Remove and replace all mentioned areas."
After defendant was arrested and advised of his Miranda [3] rights, he admitted that he performed work on the Calmeses' house and confirmed that he had been paid approximately $54,000.00 to $55,000.00 for that work. Defendant stated that he was unaware of any problems regarding his work until the Calmeses terminated him. Defendant said he used Mr. Walter's license number because he had taken "on another party to alleviate some of" his workload and confirmed that Ms. Authement was his ex-girlfriend. Defendant explained that he had not paid the outstanding balance owed to John Sun for the Calmeses' cabinets because he had not been paid enough money. Defendant admitted that the email "eblackwell777@yahoo.com" contained on the flyer provided to the Calmeses was his personal email address and that one of the phone numbers listed on the flyer was for Professional Shoring Elevations, a corporation defendant started in 2011 with Mr. Walters.
The bank records for PRS showed that this company maintained two accounts, one with Regions bank and one with Capital One bank. The account maintained at Regions was listed under the name "PRS, 225 Lee Street, Slidell," with an associated email address of "professionalrspecialists@gmail," which was consistent with the flyer provided by defendant. The signatory listed on the account was Ms. Authement. But, the Regions bank records contained several cancelled checks signed by defendant, including a check signed by defendant for work performed on the Calmeses' house. Prior to the deposits of the Calmeses' checks, the Regions account contained less than $100.00. After the deposits were made, the records showed that Ms. Authement wrote checks to herself for *1238 $3,000.00 in October of 2012 and $1,000.00 in November of 2012. The PRS business account further reflected spending charges at clothing retail stores and bar establishments.
As to the Capital One account, bank records reflected defendant was signing checks made out to PRS and was writing checks to Mr. Walters and Ms. Authement. Defendant also had a personal bank account with Capital One in which two checks made out to PRS d/b/a Ernest Blackwell were deposited.
At trial, the John Sun office manager confirmed that in September of 2012 her business provided cabinets for the Calmeses' renovation. The invoice dated December 14, 2012 for $8,824.00 was billed to Professional Shoring via email address "eblackwell777@yahoo.com." John Sun received a check for $6,000.00 from Professional Shoring Elevations and signed by defendant, leaving a remaining balance of $2,824.00. Repeated attempts were made to secure payment of the outstanding balance to no avail, so a lien was placed on the Calmeses' property on March 15, 2013. The outstanding invoice was eventually paid a few months prior to trial on May 13, 2015, by cashier check listing the name of the remitter as "Mr. Walters." The outstanding fees owed for the filing of the lien in the amount of $475.00 were also paid by cashier check the day before the trial commenced, referencing Mr. Walters as the remitter and hand delivered by a woman who identified herself as "Keely."
Brian Blackwell, defendant's brother, testified on behalf of the defense. He stated that he performed work for PRS on the Calmeses' house seven days a week and that defendant acted as supervisor. He asserted that Mr. Walters and Ms. Authement, and on occasion, defendant, paid him for his work.
Lastly, Keely Authement, defendant's ex-girlfriend, testified that she has been in the construction business for many years, and that in September of 2012, she formed PRS with Mr. Walters, whom she met through defendant. She further explained that she and Mr. Walters are the only two owners of PRS and that Mr. Walters is a licensed contractor. Ms. Authement stated that she hired defendant as her foreman to perform work on houses that had been damaged in St. John Parish in 2012 by Hurricane Isaac. Ms. Authement testified that as co-owner of PRS, she signed a contract with the Calmeses containing PRS' license which she authorized defendant to deliver to the Calmeses. Ms. Authement stated that she never received a check for $6,0000 for roof work allegedly performed on the Calmeses' roof. She further testified that she authorized defendant to pick up the Calmeses' cabinets from John Sun and that defendant paid for the cabinets out of his own account and was then reimbursed by PRS. Ms. Authement was unaware that a lien was pending on the Calmeses' home because of outstanding fees owed to John Sun for the cabinets; however, when she became aware, the money owed was paid.
Appellate Jurisdiction
This Court's appellate jurisdiction extends only to cases that are triable by a jury. State v. Chess, 00-164 (La. App. 5 Cir. 6/27/00), 762 So.2d 1286, 1287 (citing La. Const. of 1974, art. 5 § 10 ; La. C.Cr.P. art. 912.1 ). Unless the punishment that may be imposed exceeds six months imprisonment, a misdemeanor is not triable by a jury. Chess, supra (citing La. Const. of 1974, art. 1 § 17 ; La. C.Cr.P. art. 779 ; State v. Robinson, 94-864 (La. App. 5 Cir. 3/15/95), 653 So.2d 669, 670 ).
In the present case, defendant was charged with and convicted of home improvement fraud, in violation of La. R.S. 14:202.1(A)(2), a misdemeanor carrying a possible fine of not more than one thousand dollars and imprisonment for not *1239 more than six months. See La. R.S. 14:202.1(D)(2). Defendant's misdemeanor was not triable by a jury, thus, defendant's misdemeanor offense was tried by bench trial simultaneously with defendant's felony offenses, which were filed in a separate bill of information. The proper procedure for seeking review of a misdemeanor conviction is an application for writ of review directed to this Court to exercise its supervisory jurisdiction. See La. C.Cr.P. art. 912.1(C)(1) ; State v. Trepagnier, 07-749 c/w 07-750 (La. App. 5 Cir. 3/11/08), 982 So.2d 185, 188, writ denied, 08-0784 (La. 10/24/08), 992 So.2d 1033.
Nonetheless, this Court has reviewed misdemeanor convictions and sentences on appeal when the misdemeanor and felony convictions are so intertwined that the interest of justice are better served by considering the matters together. In State v. Carroll, 16-599 (La. App. 5 Cir. 2/8/17), 213 So.3d 486, 488, defendant was charged by bill of information with two counts of battery upon a correctional facility employee, in violation of La. R.S. 14:34.5. Defendant eventually pled guilty to the amended charge of battery of a police officer, in violation of La. R.S. 14:34.2 and battery of a correctional facility employee. This Court found that the misdemeanor and felony convictions were so intertwined that considering the matters together better served the interest of justice.
In State v. Jones, 12-640 c/w 12-641 (La. App. 5 Cir. 10/30/13), 128 So.3d 436, 441-43, defendant was charged with resisting an officer, a misdemeanor, in one bill of information and with second offense possession of marijuana, a felony, in a separate bill of information. Defendant pled guilty pursuant to State v. Crosby, 338 So.2d 584 (La. 1976), and reserved the right to appeal the denial of his motion to suppress. Defendant filed a motion for appeal in both cases, which was granted, and asked this Court to consolidate the matters for appeal. At the trial court level, the misdemeanor case was grouped together with the felony case for the motion to suppress hearing and defendant's guilty pleas, and his sentencing in both matters occurred simultaneously. This Court held that because the two convictions appeared intertwined, judicial economy dictated considering the matters together. See also, State v. Christophe, 12-82 (La. App. 5 Cir. 10/16/12), 102 So.3d 935, writ denied, 12-2432 (La. 4/19/13), 111 So.3d 1029.
In this case, defendant's misdemeanor and felony offenses were charged in separate bills of information. Defendant's felony appeal is also currently pending before this Court (18-KA-116), and the facts in both defendant's felony and misdemeanor cases are the same. Thus, judicial economy supports reviewing defendant's felony and misdemeanor convictions at the same time. Accordingly, although no motion to consolidate was filed relative to defendant's felony and misdemeanor appeals, we find defendant's misdemeanor and felony convictions are so intertwined that judicial economy and the interest of justice are better served by considering both together on appeal. We, however, render separate opinions on the misdemeanor conviction and sentence and the felony convictions and sentences.
Assignment of Error One
In his first assignment of error, defendant generally states that he is challenging his misdemeanor conviction and two felony convictions. The substance of defendant's argument, however, focuses solely on the sufficiency of the evidence used to convict him of the felony offenses, engaging in the business of contracting without a license and misapplication of payment by a contractor.[4] Defendant did *1240 not brief any alleged error regarding the sufficiency of the evidence used to convict him of the misdemeanor offense of home improvement fraud, which requires proof that he: (1) contracted to perform or subcontracted for the performance of any home improvement; and (2) knowingly used "any deception, false pretense, or false promise to cause any person to enter into a contract for home improvements." La. R.S. 14:202.1(A)(2).[5]
La. U.R.C.A., Rule 2-12.4(B)(4) provides that "[a]ll assignments of error and issues for review must be briefed. The Court may consider as abandoned any assignment of error or issue for review which has not been briefed." See also State v. Tranchant, 10-459 (La. App. 5 Cir. 11/23/10), 54 So.3d 730, writ denied, 10-2821 (La. 4/29/11), 62 So.3d 108. Because defendant has failed to brief or discuss this assigned error, we find that defendant has abandoned this assignment of error and do not address its merits.[6]
Assignment of Error Two
In his second assignment of error, defendant argues his motion for mistrial premised on a witness, Detective Shard's, statement regarding defendant's pending charge for home improvement fraud (the instant misdemeanor offense) was erroneously denied by the trial court. This assignment of error relates to defendant's felony convictions pending before this Court under case number 18-KA-116 and is addressed in the opinion for that case. It is not applicable to defendant's misdemeanor conviction as defendant argues he was prejudiced when a witness referenced the instant home improvement fraud charge before the jury. Thus, we do not address the arguments related to this assignment of error here.
Errors Patent Discussion
We reviewed the record for errors patent and address the following. See La. C.Cr.P. art. 920 ; State v. Oliveaux, 312 So.2d 337 (La. 1975) ; and State v. Weiland, 556 So.2d 175 (La. App. 5th Cir. 1990).
Post-Conviction Advice
Based on the record, defendant received incomplete advice regarding the period for seeking post-conviction relief, as required by La. C.Cr.P. art. 930.8. The law provides that if a defendant receives incomplete advice of the period for seeking post-conviction relief, the appellate court may correct this error by informing the defendant of the applicable prescriptive period for post-conviction relief in its opinion. See State v. Perez, 17-119 (La. App. 5 Cir. 8/30/17), 227 So.3d 864. Thus, we hereby inform defendant that under La. C.Cr.P. art. 930.8, a defendant shall have two years after the judgment of conviction and sentence has become final to seek post-conviction relief.
Illegal Sentence
The trial court imposed defendant's misdemeanor sentence without benefit of probation or suspension of sentence. However, La. R.S. 14:202.1 does not require such restrictions. Defendant's sentence is therefore illegal. According to *1241 La. C.Cr.P. art. 882(A), "an illegal sentence may be corrected at any time by the court that imposed the sentence or by an appellate court on review." Thus, we amend defendant's sentence to remove the restriction on probation and suspension of sentence. See State v. Hebert, 04-134 (La. App. 5 Cir. 6/29/04), 877 So.2d 1115, 1123, writ denied, 04-2674 (La. 2/25/05), 894 So.2d 1132.
Restitution
The restitution minute entry from September 12, 2016 reflects that the trial court imposed $38,900.00 in restitution on defendant's felony offense of engaging in business without a contractor's license, when the transcript reflects that the trial court imposed said restitution on the instant misdemeanor conviction for home improvement fraud. The jurisprudence allows this Court to remand a case for correction of the minute entry in its errors patent review. See State v. Lyons, 13-564 (La. App. 5 Cir. 1/31/14), 134 So.3d 36, writ denied, 14-0481 (La. 11/7/14), 152 So.3d 170 (citing State v. Long, 12-184 (La. App. 5 Cir. 12/11/12), 106 So.3d 1136, 1142 ). Accordingly, we remand the matter for correction of the minute entry to accurately reflect that the restitution imposed in this case was on defendant's misdemeanor conviction for home improvement fraud.
CONVICTION AFFIRMED; SENTENCE AMENDED AND AFFIRMED AS AMENDED; REMANDED WITH INSTRUCTIONS

On September 17, 2015, a unanimous six-person jury found defendant guilty on both felony counts. Defendant's felony convictions are currently pending before this Court on appeal under companion case number 18-KA-116.

Testimony revealed that Ms. Authement is defendant's ex-girlfriend and is not a licensed contractor.

Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

The issues related to these arguments are discussed in this Court's opinion for case number 18-KA-116.

It is further noted that while the State filed a brief in defendant's felony appeal, it did not file one in the instant misdemeanor case, and further did not address the sufficiency of the evidence as it relates to defendant's misdemeanor conviction in its brief filed under docket number 18-KA-116.

Nevertheless, a review of the record under State v. Raymo, 419 So.2d 858, 861 (La. 1982), reflects that the State presented sufficient evidence to establish the essential statutory elements of home improvement fraud through testimony and by means of the evidence presented at trial as further detailed in the written judgment rendered by the trial court on December 28, 2015.