857 So.2d 1024 (2003)
STATE of Louisiana
v.
Jason HELOU.
No. 2002-K-2302.
Supreme Court of Louisiana.
October 23, 2003.
*1025 William R. Campbell, Jr., Kenota P. Johnson, for Applicant.
Richard P. Ieyoub, Attorney General, Michael Harson, District Attorney, James N. Prather, Jr., New Orleans, for Respondent.
JOHNSON, Justice.
The defendant was charged by bill of information with the offense of second degree battery. After trial, a unanimous six person jury found the defendant guilty as charged, and he was sentenced to serve three years at hard labor with one year suspended. The defendant appealed his conviction and sentence. The Third Circuit Court of Appeal affirmed his conviction but vacated his sentence and remanded the case for resentencing.[1] Upon the defendant's application, we granted certiorari to consider the correctness of that decision, being particularly interested in the sufficiency of evidence issue.[2]

FACTS AND PROCEDURAL HISTORY
On September 12, 1997, Mr. and Mrs. Floyd Richard were in the parking lot of the Academy Sporting Goods store in Lafayette, Louisiana, when a young man, Jeremy Jones ("Jones") ran past them and yelled, "Help me, Mister. There's some people who want to hurt me." Shortly thereafter, the defendant, Jason Helou, and two other men followed behind Jones while screaming expletives. Offended by the profanity, Mr. Richard ("the victim") asked the three men to watch their language. The defendant then moved closer to the victim and asked him if he wanted to "make something of it" and spat at him and his wife. In response, the victim swung at the defendant. The defendant then struck the victim's nose with his fist. His friends jumped on the victim and beat him until a bystander yelled that the police were on the way. After the defendant and the other two men fled the scene, an ambulance arrived and transported Mr. Richard to a hospital for medical treatment of his bloody nose.
The State subsequently charged the defendant with second degree battery. A jury found him guilty as charged. On appeal, the Third Circuit affirmed the *1026 conviction with one judge dissenting. In deciding the issue of sufficiency of the evidence, an appellate court, when considering the evidence in a light most favorable to the prosecution, must determine whether the trier of fact could have found proof beyond a reasonable doubt as to each of the essential elements of the crime charged. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). The court of appeal upheld the defendant's conviction based on the "disfigurement" and "impairment of a mental faculty," a pair of components of LSA-R.S. 14:34.1, infra. The court of appeal held that the defendant possessed specific intent to inflict serious bodily injury on the victim. The court of appeal concluded that the State introduced sufficient evidence to prove that Mr. Richard went to the hospital and received some type of treatment, thus, proving serious bodily injury. The court of appeal further held that, as the aggressor, the defendant could not claim self-defense.
In a dissent, Judge Thibodeaux found that the defendant's conduct justified a conviction of simple battery but not second degree battery. Judge Thibodeaux noted that after a careful review of the record, there was no evidence to establish that the victim suffered a "serious body injury," instead he suffered only a bloody nose. He pointed out that although the victim may have been confused when he testified that his wife was with him in the ambulance on the trip to the hospital, as the State conceded, there was no evidence of unconsciousness. He also pointed out that there was no evidence to support a "serious bodily injury," i.e., no extreme physical pain; no protracted and obvious disfigurement; no protracted loss or impairment of the function of a bodily member; no impairment of mental faculty; and no substantial risk of death.
Judge Thibodeaux distinguished State v. Hernandez, 96-115 (La.App. 4 Cir. 12/18/96), 686 So.2d 92, where the defendant struck his wife and two daughters repeatedly with an electrical cord. The defendant was convicted on two counts of simple battery and one count of second-degree battery. The court of appeal affirmed the convictions, holding that the evidence showed that the defendant intentionally inflicted serious bodily injury on one of his daughters. The defendant struck her on the back and in the face with the electrical cord, resulting in an elongated laceration on her shoulder, cuts to her face, and a cut to her finger as she used her hand to shield her face. Judge Thibodeaux pointed out that in Hernandez, the victim's injuries were obvious, while in this case, the facts do not support a finding of "disfigurement."
The dissenter also opined that State v. Stowe, 93-2020 (La.4/11/94), 635 So.2d 168 is distinguishable from the instant case. In that case, the defendant hit a police officer in the head knocking him into a ditch, causing the officer to suffer a contusion and edema to his eye, with the eye swollen nearly completely shut; bruises and contusions all over his face; and abrasions on his head and chin. In Stowe, there was evidence of a severe injury to the eye, as well as cuts and bruises. The victim suffered severe headaches on a daily basis for two weeks following the incident. This Court found that the testimony of the eyewitnesses; the Chief of Police, who transported the victim to the hospital; photographs of the injuries; medical records; and the doctor's report were sufficient evidence to justify the defendant's conviction of second degree battery.
He further determined that State v. Galloway, 551 So.2d 701 (La.App. 1 Cir.1989), where the defendant struck an elderly victim, who suffered with diabetes and had *1027 recently undergone open heart surgery, was not analogous to the case at bar. In Galloway, the State provided evidence to show that following the attack where the victim was struck in the mouth, and stomped on his chest and groin, that the victim's vision was limited because his eyes were cloudy with blood; that the victim occasionally lost consciousness; and that he suffered a large hematoma on his scalp and lacerations which required several stitches to close. Also, in Galloway, there was testimony from a physician that the victim's injuries would have caused him extreme pain.
Judge Thibodeaux reasoned that in the case sub judice, Lori Miller, a former army medic and an eyewitness to the incident, testified that the only visible sign of an injury was profuse bleeding from the nose and "small minor scrapes on his body." He noted that the injuries were so minor that the victim did not wish to call an ambulance. Judge Thibodeaux concluded that the State failed to present evidence necessary to support the element of "serious bodily injury" as required by LSA-R.S. 14:34.1.

DISCUSSION
The sole issue before this Court is whether the evidence presented to the jury was sufficient to justify a conviction for second degree battery. Stated differently, we must determine whether the State proved beyond a reasonable doubt that the defendant inflicted "serious bodily injury" as defined in LSA-R.S. 14:34.1.
LSA-R.S. 14:34.1 provides that:
Second degree battery is a battery committed without the consent of the victim when the offender intentionally inflicts serious bodily injury.
For purposes of this article, serious bodily injury means bodily injury which involves unconsciousness, extreme physical pain or protracted and obvious disfigurement, or protracted loss or impairment of the function of a bodily member, organ, or mental faculty, or a substantial risk of death.
Whoever commits the crime of second degree battery shall be fined not more than two thousand dollars or imprisoned, with or without hard labor, for not more than five years, or both.
(Emphasis added)
This Court has held that the phrase "extreme physical pain" as used in the statute is not unconstitutionally vague, since it "describes a condition which most people of common intelligence can understand." State v. Thompson, 399 So.2d 1161, 1168 (La.1981).
When considering a claim of insufficient evidence, a reviewing court must determine whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Smith, 600 So.2d 1319 (La.1992). It is not the function of an appellate court to assess credibility or re-weigh the evidence. State v. Rosiere, 488 So.2d 965 (La.1986).
According to Jackson v. Virginia, supra, the State has the burden of proving each element of the crime beyond a reasonable doubt. As stated above, the State must prove that: 1) the defendant committed a battery;[3] 2) without the victim's *1028 consent; and 3) the victim suffered serious bodily injury.
The defendant contends that the State failed to prove he committed second degree battery. Specifically, he argues that the State failed to prove that the victim suffered "serious bodily injury."
In its case in chief, the State relied on the testimony of Lori Miller, the former army medic; Mrs. Caroline Richard, the wife of the victim; and Mr. Floyd Richard, the victim. At trial, Lori Miller testified that she was waiting in the car for her husband when she witnessed three men, one of whom was shouting profanities, chasing another man, later determined to be Jeremy Jones. The Richards were leaving the store, and they simply told the defendant to "watch his language." The defendant then directed his profanity toward Mr. Richard while moving towards him and ultimately blocking Mr. Richard's path to his vehicle. The defendant "insisted" on starting a fight. The defendant struck Mr. Richard in the face and the other two men joined in the fight. According to Miller, as a result of the fight, there were large puddles of blood on the ground, so much so that it was hard to tell exactly from where the blood was coming.
Mr. Floyd and Mrs. Caroline Richard testified to the same facts as Miller, but they testified, in addition, that when Mr. Richard told the defendant about the profanity, he came toward them and spat in their direction. Then, in an effort to defend himself, Mr. Richard hit the defendant with the bag which was in his hand. At that time, the other two men surrounded Mr. Richard and began beating him. Mrs. Richard testified that her husband's nose was bleeding profusely. Mr. Richard testified that he had never seen so much blood in his life. He also testified that his shoes, the front of his jeans, and his shirt were all saturated with blood.
The State submits that we must infer from the amount of bleeding that the victim suffered a "severe bodily injury." This Court finds that the presence of blood alone does not satisfy the "serious bodily injury" element of second degree battery. Our jurisprudence demonstrates many cases where the State proved the "serious bodily injury" element of second degree battery. Some examples are: 1) State v. Abercrumbia, 412 So.2d 1027 (La.1982), where the defendant hit the victim with boards across his head, neck, and arm, causing a "deep cut over his right eye;" 2) State v. Robertson, 98-0883 (La.App. 3d Cir.12/9/98), 723 So.2d 500, writ denied, 99-0658 (La.6/25/99), 745 So.2d 1187, where the defendant knocked the victim to the ground and repeatedly kicked and hit her until she "kind of lost her senses for a minute;" the victim had bruises and contusions over the entire extent of her body, which left significant scars and lacerations on her nose; and 3) State v. Robinson, 549 So.2d 1282, 1285 (La.App. 3d Cir.1989), where the defendant stabbed the victim twice with a large, folding knife.
There are other cases which indicate that less substantial injuries may also constitute "serious bodily injury." See State v. Young, 00-1437, pp. 9-10 (La.11/28/01), 800 So.2d 847, 852-853, where the victim suffered a bloody nose, tenderness in hyoid area below the larynx, and complained of pain at incision in his lower abdominal area. The physician testified that the defendant's act of choking the victim could have resulted in substantial risk of death, and three months after the attack, the victim continued to have throat problems; State v. Diaz, 612 So.2d 1019, 1022-1023 (La.App. 2d Cir.1993), where the defendant broke the victim's jaw during a group fight; State v. Mullins, 537 So.2d 386, 391 (La.App. 4th Cir.1988), where a 6 foot tall defendant punched a *1029 5'5" girlfriend, breaking her nose; State v. Legendre, 522 So.2d 1249, 1251 (La.App. 4th Cir.1988), writ denied, 523 So.2d 1321 (La.1988), where the defendant raised the victim over his head and smashed her to the floor, rendering her momentarily immobile and requiring a brief hospitalization followed by outpatient treatment leading to a loss of employment for several weeks; State v. Accardo, 466 So.2d 549, 552 (La. App. 5th Cir.1985), writ denied, 468 So.2d 1204 (La.1985), where a 17-year-old female victim was struck on the head by the defendant with either his fist or a blackjack, causing the side of her face to swell.
After a careful review of LSA-R.S. 14:34.1 and the related jurisprudence, we find that in the case sub judice, the State failed to offer any evidence of "extreme physical pain" by way of testimony from the fact witnesses. Nor do we have testimony from medical witnesses or medical records, which would prove this factor. Rather, the evidence presented, dealt solely with the amount of blood the victim lost. The record demonstrates that at trial the State's direct examination of its witnesses completely avoided the subject of pain. We cannot infer that the loss of blood is tantamount to "extreme physical pain." We also cannot infer that a punch in the nose, without more evidence, is sufficient to support a conviction of second degree battery.
In summary, there is no testimony that the victim lost consciousness at any time despite the victim's "confusion" as to whether his wife rode with him in the ambulance to the hospital. There is no evidence of severe injury. In fact, the victim initially declined medical help; he required only a brief visit to the emergency room; thereafter, he sought no further medical attention, and there is no evidence of disfigurement or permanent disability. No medical personnel appeared at trial to provide jurors with a diagnosis or a summary of the victim's treatment. The only evidence in the record is the medical bill for $983.90. There was no explanation of what medical services were provided to the victim. Because the State failed in its burden of proof, any conclusion by the jury as to pain suffered by the victim was simply a guess on the jury's part, since the State failed to offer any evidence on the issue. Simply put, because the jury had to infer the victim's pain, the State failed to prove beyond a reasonable doubt that the victim, in fact, suffered "extreme physical pain" as required by the statute. Accordingly, we conclude that the evidence is insufficient to sustain the defendant's conviction for second degree battery.
Nevertheless, we find that the evidence is sufficient to support a conviction for simple battery. Simple battery is an authorized responsive verdict to a charge of second degree battery. LSA-C.Cr.P. art. 814 A(15). A battery is defined as "the intentional use of force or violence upon the person of another." LSA-R.S. 14:33. Pursuant to LSA-R.S. 14:35, a simple battery is a battery committed without the consent of the victim.
In this case, it is undisputed that the defendant struck Mr. Richard in the nose with his fist, which constitutes a "force of violence" upon Mr. Richard. It is also clear that Mr. Richard did not consent to being struck. Accordingly, we vacate the defendant's conviction for second degree battery and enter a conviction for simple battery, a statutory responsive verdict pursuant to LSA-C.Cr.P. art. 814 A(15). We remand this matter to the trial court for resentencing for simple battery.
WEIMER, J., dissents and assigns reasons.
KNOLL and TRAYLOR, JJ., dissent for the reasons assigned by WEIMER, J.
*1030 WEIMER, J., dissenting.
I respectfully dissent for the following reasons.
During 1978, the legislature amended and reenacted Subpart B of Part II Offenses Against the Person of Chapter 1 of Title 14 of the Louisiana Revised Statutes of 1950. Act No. 394 of 1978 amended and reenacted LSA-R.S. 14:34.1[1] to provide as follows:
Second degree battery is a battery committed without the consent of the victim when the offender intentionally inflicts serious bodily injury.
For purposes of this article, serious bodily injury means bodily injury which involves unconsciousness, extreme physical pain or protracted and obvious disfigurement, or protracted loss or impairment of the function of a bodily member, organ, or mental faculty, or a substantial risk of death.
Whoever commits the crime of second degree battery shall be fined not more than two thousand dollars or imprisoned, with or without hard labor, for not more than five years, or both.
With the amendment and reenactment of the statute, the legislature created a new category of battery which requires proof of the extent of injuries sustained by the victim. By definition, "serious bodily injury" would require that the victim suffer an injury which is more severe than mere "bodily injury." Second degree battery should obviously be contrasted with simple battery from the standpoint of proof of injury. Simple battery[2] does not require proof of any injury. Prior to the adoption of second degree battery, one who battered another faced the same sentence regardless of the injury inflicted. Formerly, persons who committed a battery without a dangerous weapon could only be prosecuted for simple battery even if crippling injuries were inflicted upon the victim. In that instance, the legislature evidently determined the penalty was disproportionate in relation to the harm suffered by the victim. Following the amendment, a person convicted of second degree battery is subject to a more severe penalty. The offense of second degree battery is a felony. Legislative Symposium, Criminal Law, 39 La.L.Rev. 227, 229-230 (1978).
A conviction for second degree battery requires proof beyond a reasonable doubt that the defendant committed a battery upon another, without the victim's consent, and intentionally inflicted "serious bodily injury" as that phrase is defined in the statute quoted above. There is no dispute that the defendant inflicted a battery on the victim. The only issue is whether the *1031 defendant intentionally inflicted serious bodily injury. Thus, the facts must be analyzed to determine whether the State proved beyond a reasonable doubt serious bodily injury was intentionally inflicted.
Initially, the definition of "serious bodily injury" as set forth in the statute must be evaluated. To establish "serious bodily injury," the State must prove any one of the injuries or conditions listed in the statute. The first condition listed is "unconsciousness." Review of the record reveals that Mr. Richard's injuries did not include unconsciousness, although the record indicates some confusion on his part in that he believed, until the day of the trial, that his wife had accompanied him to the hospital in the ambulance. However, such evidence is not sufficient to establish unconsciousness; rather, such evidence is as likely to indicate a faulty memory. The second condition included in the definition of serious bodily injury is "extreme physical pain," a condition addressed infra. The next condition constituting serious bodily injury is "protracted and obvious disfigurement." Disfigurement under this example must be both obvious and protracted.[3] Thus, there must be proof of an obvious disfigurement lasting for a protracted period of time. While bloodshed could be considered as obvious, the record does not support a finding that it was protracted.
The next condition listed in defining serious bodily injury is "protracted loss or impairment of the function of a bodily member, organ, or mental faculty." The word "protracted" modifies both "loss" and "impairment," again suggesting a temporal element.[4] There was no evidence to establish a loss or impairment over an extended period of time to support a finding of the injury being protracted.
The last condition listed in the statute is "a substantial risk of death." The record contains no evidence remotely suggesting that the victim's injuries posed a substantial risk of death.
The remaining, and only applicable, condition included in the statutory definition of serious bodily injury is "extreme physical pain." According to the statute, the physical pain must be extreme; however, there is no temporal element required. The word "protracted," which appears in other portions of the definition, does not modify "extreme physical pain." There is thus no requirement that the pain last a specific length of time, only that the pain be extreme.
This court has previously considered the phrase "extreme physical pain" referenced in this statute. In that instance, the defendant argued the statute was unconstitutional because it allowed the victim's subjective perception to be determinative of the crime. Further, the defendant argued that the failure to define the phrase improperly vested the jury with a legislative function. In State v. Thompson, 399 So.2d 1161, 1168 (La.1981), this court stated:
The phrase "extreme physical pain" describes a condition which most people of common intelligence can understand. The fact that the term is subjective in nature and susceptible to interpretation does not mean that it is violative of due process or will not necessarily be applied *1032 constitutionally. This phrase gives adequate warning of the conduct proscribed and provides a workable standard for judges and juries to fairly administer the law.
The record reflects Mr. Richard suffered a blow to the nose resulting in substantial blood loss. He testified that he had never bled so much in his life. His deck shoes were covered in blood, substantial blood was on the front of his jeans and his shirt was saturated with his blood. He was aware that there was blood on the ground, but could not testify as to the quantity because everyone was trying to get him to hold his head back in an attempt to stop the bleeding. Because of the quantity of blood on his clothes, Mr. Richard stated he hoped someone would provide a ride to the hospital in the rear of a pickup truck, otherwise he would ruin his vehicle. Fortunately, someone on the scene called for an ambulance and Mr. Richard was transported to the hospital by ambulance for treatment.
Mrs. Richard also testified at the trial. Her testimony corroborated her husband's version of the events leading up to the fight. During her testimony, she acknowledged that it was her husband who was injured in this matter. Mrs. Richard also testified as to the quantity of blood that was lost. She testified that he "was bleeding profusely. I mean, it was just pouring out.... [H]e's got high blood pressure, and I was really worried." A truck driver whom Mrs. Richard believed to have some EMT training suggested an ambulance be summoned because Mr. Richard was "bleeding way too much." She also testified to the pools of blood on the ground, and the blood on Mr. Richard's shirt. Mrs. Richard also testified they had received bills from the ambulance, the hospital, and the doctor totaling $983.90.
Lori Miller, a college student and former army medic, was also called as a witness for the prosecution. She was seated in her vehicle in the parking lot with the windows rolled down when the incident began and heard the defendant and his two companions yelling foul language while chasing another person. She heard the Richards ask the trio to watch their language. Mrs. Miller testified that she witnessed the fight from her vehicle which was about 20 to 25 feet away. She testified that Mr. Richard sustained some very serious blows to his face resulting in tremendous amounts of blood on his face. It was difficult to tell whether the blood was coming from his nose or mouth, but she testified "a lot of blood was protruding [sic] from his nose." She testified there was a large puddle of blood on the ground and drips across the parking lot. Mrs. Miller also testified that Mr. Richard's shirt was covered with blood. Additionally, she testified that during the fight, Mrs. Richard frantically yelled, "someone call the police, call an ambulance, my husband's hurt."
"In reviewing the sufficiency of the evidence to support a conviction, an appellate court in Louisiana is controlled by the standard enunciated by the United States Supreme Court in Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).... [T]he appellate court must determine that the evidence viewed in the light most favorable to the prosecution, was sufficient to convince a rational trier of fact that all of the elements of the crime had been proved beyond a reasonable doubt." State v. Captville, 448 So.2d 676, 678 (La.1984). Defendant argues that the record does not contain sufficient evidence to support a conviction in light of the Jackson standard. He asserts, and correctly so, that the record contains no testimony from the victim that he suffered "extreme physical pain" as a result of the *1033 beating. However, it is not necessary that the victim recite these exact words to establish this element of the offense.
It is within the ordinary experience of a rational jury to evaluate the circumstantial evidence surrounding this incident and make a determination that Mr. Richard suffered extreme physical pain considering the testimony presented regarding the particulars of the fight and the testimony regarding the amount of blood loss. A rational jury could well conclude that a violent blow to the nose, inflicted with such force as to produce bleeding as described by the victim and witnesses, was sufficient to result in extreme physical pain as contemplated by the statute. See State v. Stowe, 93-2020 (La.4/11/94), 635 So.2d 168.
While the record does not indicate the respective ages of the defendant and the victim, nor a comparison of their size and body type, the jury was able to view firsthand such characteristics, as well as the demeanor of the witnesses. From these factors, the jury was entitled to draw on life experiences. It is the province of the jury to evaluate the evidence presented and arrive at a determination. That is what the jury did, and its verdict should not be set aside.
Jurors are chosen from different walks of life for the purpose of bringing to their deliberations a variety of different life experiences. Jurors represent the community in the criminal justice system. Although obligated to follow the law, jurors can draw on their common life experiences and apply their collective common sense.
During deliberations, the jury requested the definition of simple battery. The trial judge acknowledged the definition was in his charge and that he was simply going to read the charge to them.[5] Following the reading of the definition, the jury wanted to know the penalty for simple battery. The trial judge, realizing the penalty for simple battery had not been included in the charge, and after consulting with the prosecution and defense counsel and obtaining their consent, read the second part of the statute which provides the penalty for simple battery. This inquiry by the jury indicates that this particular jury was clearly focused on and cognizant of the difference between simple battery and second degree battery and the significance of that distinction.
From the evidence presented, a rational jury could conclude that the first blow struck by the defendant was delivered with such force that the victim shed a substantial amount of blood, and that this blow, causing profuse bloodshed, inflicted extreme physical pain upon the victim. Further, after the first blow was struck, the defendant continued to rain blows on the victim with the assistance of his confederates. The victim's wife cried out her husband was hurt, a bystander called for an ambulance, and the victim was taken to the hospital for treatment. To determine from an appellate record that the jury erred in determining from these facts that there was proof beyond a reasonable doubt the defendant intentionally inflicted serious bodily injury would be an affront to the jury's collective wisdom and common sense.
Thus, I would affirm defendant's conviction and remand to the trial court for resentencing.
NOTES
[1] State v. Helou, 02-0077 (La.App. 3d Cir.6/5/02), 822 So.2d 647.
[2] State v. Helou, 02-2302 (La.3/28/03), 840 So.2d 554.
[3] LSA-R.S. 14:33 provides that a battery is the intentional use of force of violence upon the person of another.
[1] Prior to the 1978 amendment and reenactment, LSA-R.S. 14:34.1 was titled "Aggravated battery resulting from a misdemeanor." The statute provided in part:

A. Whoever with intent to provoke a breach of the peace, or under circumstances such that a breach of the peace may be occasioned thereby:
. . . .
(2) insults or makes rude or obscene remarks or gestures, or uses profane language, or physical acts, or indecent proposals to or toward another or others, or disturbs or obstructs or interferes with another or others, or
. . . .
B. Whoever commits an aggravated battery as defined herein shall be imprisoned for not more than ten years.
Following the 1978 amendment and reenactment, LSA-R.S. 14:34.1 is now titled "Second degree battery."
[2] LSA-R.S. 14:35 defines simple battery as a battery committed without the consent of the victim. Battery is defined in LSA-R.S. 14:33 as the intentional use of force or violence upon the person of another; or the intentional administration of a poison or other noxious liquid or substance to another.
[3] The term "protracted" is not listed in BLACK'S LAW DICTIONARY (7th ed.1999), but is defined by THE NEW OXFORD AMERICAN DICTIONARY 1371 (2001) as: "lasting for a long time or longer than expected or usual."
[4] At oral argument the State contended that "protracted" only modified "loss" and not "impairment" of the function of a bodily member, organ, or mental faculty. That argument would lead to an illogical result-the loss would have to be protracted, but impairment would have to last only momentarily.
[5] The trial transcript reflects the following:

(The Judge reads to the jury the definition of simple battery in the jury deliberation room during which time court personnel, Mr. Prather [Assistant District Attorney], Mr. Willard [defense counsel], and the defendant, Jason Helou, are in the courtroom listening.)